## PORTER et al. v. LEDERER, Internal Revenue Collector.

(District Court, E. D. Pennsylvania. July 27, 1920.)

No. 6420.

1. **Internal revenue ☞7—"Capital" defined.**

   The word "capital" is used in Internal Revenue Act, § 209 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6336⅞j), providing for excess profits tax on a trade or business "having no invested capital or not more than a nominal capital," as meaning money or property, as distinguished from labor or personal service.

2. **Internal revenue ☞7—Excess profits tax; "business having no invested capital."**

   Act Oct. 3, 1917, § 209 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6336⅞j), providing that, "in the case of a trade or business having no invested capital or not more than a nominal capital," an excess profits tax of 8 per cent. shall be levied on the net income, after allowing certain deductions, in lieu of the tax imposed by section 201 (sec. 6336⅞b), is intended to include any trade or business in which the return does not come in any substantial part from money or property invested.

3. **Internal revenue ☞7—Excess profits tax; commission firm taxable as business without invested capital.**

   A partnership engaged in the commission business, in which capital was not required nor used, *held* taxable on excess profits, under Act Oct. 3, 1917, § 209 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6336⅞j), and not under section 201 (section 6336⅞b), although in isolated transactions growing out of war conditions they bought and sold.

4. **Internal revenue ☞7—Excess profits tax; undrawn profits not capital.**

   The fact that the profits of a business having no capital are not wholly withdrawn, but are allowed to accumulate, does not make such profits a capital fund, where they are not employed in the business.

At Law. Action by T. J. Porter and others, copartners as T. J. Porter & Sons, against Ephraim Lederer, Collector of Internal Revenue. Trial without jury. Judgment for plaintiffs.

Prichard, Saul, Bayard & Evans, of Philadelphia, Pa., for plaintiffs.
Charles D. McAvoy, U. S. Atty., of Philadelphia, Pa., for defendant.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DICKINSON, District Judge. This case, in its general features, is the usual one of a trial without the intervention of a jury and waiver of the right of a jury trial, brought for the purpose of having determined the legality of the tax payment exacted of the plaintiff. The only issue in the cause is the lawfulness of the tax.

[1] The real point involved is whether the assessment of the tax should have been under section 209 of the Revenue Act of October 3, 1917, or under section 201 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 6336⅜j, 6336⅜b). More particularly, the turning point is whether the plaintiffs come under the designation of those who carry on a "business having no invested capital or not more than a nominal capital," or whether they are possessed of "invested capital." The issue raised is in consequence to be determined by a finding of fact, and the acceptance of a definition of "capital" within the meaning of this tax law. This general term is one employed in the discussion of certain phases of the general subject of economics. It is also used as a technical term in practical business and as part of the terminology of the law. As in the case of many words and expressions encountered in the science of economics and in practical business, it has so many different meanings or shades of meaning that its sense can be gathered only from its context.

We must therefore confine our attention to this act of Congress to discover what Congress meant to be expressed by the use of the word. Congress was dealing with the general subject of income, earnings, or, more emphatically, profits. There is a clear line of difference between the source of the return which comes from any of the business activities of life. One such source is the return which flows from the labors of man, either physical or mental, or a combination of both, and that which flows to him because, not of what he is or what he himself does, but because of something of which he is previously possessed. It is an intelligible expression to say of a man that his capacity for labor, or what is called his brains, is his capital; but it is clear that Congress has used this word in no such sense. On the other hand, the situation is an easily conceivable one in which a man has laid out money or other form of property, from which he receives a return without any personal participation on his part in the activities which in the end yield that return. There can be no doubt that such a situation would clearly present the thought of capital in the sense in which Congress has used the term. It is just as easy to grasp the thought of a man making use of both of these two means of receiving something in return. He may mingle or mix the two things together, by both investing capital in an enterprise and loaning to its activities what he himself can supply, aside from his money or other possessions.

[2] We think it to be sufficiently clear that the tax is to be measured by the return, if this element of money or other property is part of the source from which the return comes, and that the lesser rate of assessment is to be followed only in those cases in which money or property plays no part in the source of the income, or such small part as to be practically negligible. This gives us a working idea of what Congress meant by "trade or business having no invested capital or not more than

a nominal capital." The quoted phrase is taken from section 209 of the act.

[3] Our finding is that the trade or business of the plaintiffs is the kind of trade or business which Congress had in mind and described by the phrase we have quoted. Primarily and strictly, the trade or business of the plaintiffs was that of a commission house. They had no capital in any real sense, nor did they require any. If their activities had been confined exclusively to the commission business, we take it for granted that the question now raised would not have arisen. In point of fact the engagement of the plaintiffs with their principals, for whom they sold on commission, exacted of them that they devote their energies exclusively to the service of those for whom they were commission agents. Incidentally and wholly because of the business exigencies presented by and arising out of war conditions, they took up with more or less isolated transactions in which they bought and sold. It could not be said with substantial truth that these transactions were conducted by them as part of any trade or business, although the aggregate of the values involved in these transactions was by no means an inconsiderable sum.

The tax assessed is essentially an excise tax; also in a very substantial sense it is the consideration for the exercise of the privilege of the carrying on of a trade or business. It is not a tax assessed upon or because the party was engaged in one or more transactions of a trading or business character, which are short of justifying the finding that the transactions reached the dignity of carrying on a trade or business; but it is a tax which is assessed because the party is carrying on a trade or business, and is measured by the volume of the business or of the profits resulting therefrom, and, in addition to this, no tax can be assessed under the act of Congress in question, if the transactions or the trade or business were had or carried on without the employment of capital. In the economic sense credit is capital, and in the economic sense it may not be even possible for a person to have transactions of the character of those in which the plaintiffs were engaged without the employment of capital in some form in this broader sense of the term. The fact is, however, and is so found, that in the words of section 209 what they did and the conditions under which they did it present "the case of a trade or business having no invested capital or no more than a nominal capital." The source of the funds constituting the capital is of no importance. Such funds may be available by the profits which have accrued being left to accumulate. If left for the purpose of being used as capital, and being so used, such funds are capital. It is not an uncommon thing for the capital employed in a business to be thus acquired or increased. It was one of the purposes of Congress to reach cases of this kind.

[4] Thus far we are in accord with the argument advanced by defendant. The mere fact, however, that the profits of a business having no capital are not wholly withdrawn, does not make of such undrawn profits a capital fund. Congress has given a clear definition of such capital, or capital derived from this source. When, in addition to profits being left undrawn, the fund thus accumulated is "used or em-

ployed in the business," it is capital within the meaning of the tax law; otherwise, it is not. The profits of the commission business in which plaintiffs were engaged piled up until the fund reached the sum of about $36,000. This fund, however, was in fact not "used or employed in the business," but, on the contrary, was held and kept intact as the money of the partners.

As we understand this case as presented, it is determined by the findings just made. Judgment is accordingly entered in favor of the plaintiffs and against the defendant, with costs. In order that there may be a definite date of the entry of the judgment for appellate purposes, judgment is not now entered; but the plaintiff has leave to enter judgment for the amount of the tax paid, with interest from date of payment, and costs, we retaining jurisdiction of the cause for the purpose of entering formal judgment, in case of failure of counsel to agree upon the amount of the judgment to be entered in accordance herewith.

The points submitted are answered as in the paper filed herewith.