### ALWORTH–STEPHENS CO. v. LYNCH.

(District Court, D. Minnesota, Fifth Division. March 30, 1922.)

1. Internal revenue ⬧7—Mine lessee held entitled to charge depletion against royalty income.

Where a corporation, which had leased mining properties, agreeing to pay the owners a stipulated royalty, leased the properties to others after ore was discovered thereon, reserving a greater royalty, and, before 1913, the ore in the properties had been entirely uncovered ready for mining by the steam shovel method, so that the quantity could be ascertained with substantial accuracy, and it was obvious that the ore would be exhausted in seven years, if mined at the rate required by the lease, the corporation is entitled to deduct from the royalties received during the year 1917, in figuring its net income and excess profits tax, a depletion to the extent of the market value in the mine of the product thereof mined and paid for during the year, figured on a risk rate basis, which was found to be an average of 9 per cent.

2. Internal revenue ⬧7—Corporation held to own valuable property interest in mines.

A corporation, which had leased mining properties, agreeing to pay a stipulated royalty on ores mined, and, after discovery of ores thereon, had leased the properties to others at an increased royalty, owned a valuable property interest or right in the mines, whose value was approximately capable of definite ascertainment, where the total quantity of ore could be determined with substantial accuracy.

---

⬧For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Internal revenue ⊜⇒7—Corporation held to have more than nominal capital.**
    A corporation, whose stockholders had paid in $25,000 on their stock subscriptions, but which had returned to the stockholders dividends exceeding such payments, had an invested capital in 1917 of the amount paid by the stockholders, which could not be said to be not more than nominal capital, so that the levy and assessment of income and excess profit taxes could not be made under either section 209 or 210 of the Revenue Act then in force (Comp. St. §§ 6336⅜j, 6336⅜k), but must be made under section 201 (section 6336⅜b).

At Law. Action by the Alworth-Stephens Company against E. J. Lynch, as Collector of Internal Revenue for the District of Minnesota, in which Margaret C. Lynch, as executrix, was substituted as defendant, after the death of the original defendant. Judgment ordered for plaintiff.

Washburn, Bailey & Mitchell, of Duluth, Minn., for plaintiff.

Alfred Jaques, U. S. Atty., of Duluth, Minn. (Newton K. Fox, of Washington, D. C., of counsel), for defendant.

MORRIS, District Judge. This case having been originally commenced by the plaintiff against E. J. Lynch, as collector of internal revenue for the district of Minnesota, while he was such collector, and he having appeared and answered while he was such collector, and the parties having stipulated in writing, duly filed herein, that the said case should be tried before the court without a jury, and it having come on for trial before the undersigned judge of said court in June, 1921, Washburn, Bailey & Mitchell appearing as attorneys for the plaintiff in said action, Alfred Jaques, Esq., United States District attorney for the district of Minnesota, having appeared as attorney for the defendant, and Newton K. Fox, attorney of the Treasury Department, having appeared as counsel, and a stipulation as to the facts having been made and filed herein and evidence having been taken before the court and briefs having been duly submitted by counsel for the parties, and after the submission of said case said E. J. Lynch having died, and it having been made to appear to the court that he had died since the case was tried and submitted, and that Margaret C. Lynch is the duly appointed, qualified, and acting executrix of the last will and testament and of the estate of said E. J. Lynch, appointed by the probate court of Ramsey county, Minn., and said Margaret C. Lynch, as executrix aforesaid, having entered her appearance herein and consented to her substitution as defendant in the said case, through Alfred Jaques, Esq., United States attorney for the district of Minnesota, and an order substituting said Margaret C. Lynch, as executrix of the last will and testament and of the estate of said E. J. Lynch, deceased, having been entered herein, as defendant herein, in place and instead of said E. J. Lynch as collector of internal revenue for the district of Minnesota, now deceased, and ordering that the said case further proceed in the name of said Margaret C. Lynch, executrix as aforesaid, as defendant, and the court being fully advised in the premises, finds as matters of fact:

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Organization of Company and Only Activities on Property Other Than the Perkins and Hudson Properties, Which Two Latter Properties are Here Directly Involved.

(1) That the Alworth-Stephens Company was incorporated under the laws of Minnesota in 1907, with an authorized capital of $100,000, which was subscribed for by five persons, who constituted the only stockholders, the subscriptions to be paid in cash at par as called for by the board of directors, and that during 1907 and 1908 five calls, of $5,000 each, were made and paid, making a fully paid in capital of $25,000, and no further calls were ever made, and $24,000 only of stock was issued, and no more ever has been issued. The certificates for this stock were still outstanding during the year 1917.

(2) That upon the organization of said company in 1907 Marshall H. Alworth and wife assigned to said company an exploratory option contract given him by Henry Stephens and Albert L. Stephens, who were the fee owners, covering about 5,000 acres of land in St. Louis county, Minn., which contract, made by said fee owners to said Alworth, was dated September 4, 1907, recorded in the office of the register of deeds of St. Louis county, Minn., September 19, 1907, in Book 4 of Agreements, on page 464, and the said assignment from said Alworth and wife to said Alworth-Stephens Company was dated October 5, 1907, and recorded in the office of said register of deeds on October 5, 1907, in Book 5 of Agreements, on page 180. The said option contract from the said fee owners gave said Alworth and said plaintiff, as his assignee, the right to explore said lands for minerals, and to call for and take leases upon the basis of a royalty of 30 cents per ton, payable to the fee owners, for all ore mined and shipped, such leases to run for a period of 50 years from their date, and to provide for the mining and removal of a quantity of ore equivalent to 25,000 tons per 40 acres annually from the premises described in each such lease, or the payment of a royalty upon said minimum annual amount at the rate of 30 cents per ton, payments to be made quarterly.

(3) That thereupon the plaintiff, Alworth-Stephens Company, with the funds provided by the subscribed stock proceeded to explore certain of said lands during the year 1908, and never conducted any explorations after said year, except that in the year 1912 it expended the sum of $1,073 in one small exploration, and that the total amount that the Alworth-Stephens Company ever expended for exploration was $40,068, which included the said $1,073 expended in the year 1912, and which included the sum of $17,868.50 expended in exploration on the Perkins property, as hereinafter set forth, and that said amount of $40,068 is the entire sum ever expended by the company up to and including the year 1917, except for dividends to stockholders, and except for sundry small items of $1,266.86, and except for the federal income and profits taxes, which were paid the United States government.

(4) That the only amounts which the plaintiff, Alworth-Stephens Company, ever received from any source, from its organization to and including the year 1917, outside of royalties received on the Perkins and Hudson properties, as hereinafter mentioned, were the said sums

of $25,000 paid in by the stockholders upon their stock, and the sum of $2,500 paid to it by the fee owners in 1915 for the release of one small tract of land upon which the said plaintiff had expended the above-mentioned sum of $1,073 in exploration during the year 1912, and the sum of $17,868.50 paid to it as reimbursement for its exploration expense on the Perkins property as hereinafter set forth.

(5) That after the year 1908 the Alworth-Stephens Company distributed to its stockholders as dividends all sums which it received, and before the end of the year 1909 had paid to its stockholders as dividends sums in excess of all amounts paid in by them for said stock, and that it did not at that time nor thereafter have any debts or obligations.

(6) That in the year 1915 the Alworth-Stephens Company released to the fee owners all the lands covered by the option contract above mentioned, and all claims thereon, except the lands known as the Perkins and Hudson properties, hereinafter mentioned, and the said company never had any other properties than those covered by the said option contracts from the said fee owners, Henry and Albert L. Stephens. That the said plaintiff, previous to said release, had given certain exploratory options to various parties without the receipt of any consideration, but none of such exploratory options had been exercised by the various optionees, and the said Alworth-Stephens Company had conducted no exploration itself, except as above stated.

(7) That during the year 1917, which is the year here involved, the plaintiff Alworth-Stephens Company, therefore owned only two properties, known as the Perkins and Hudson properties, and plaintiff's ownership and relation to said properties is as follows:

## Perkins Property.

(8) That during the year 1908 the plaintiff, Alworth-Stephens Company, conducted explorations upon the S. W. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ and the N. E. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$ of section 26, township 59, range 15, and the N. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of section 11, township 59, range 14, St. Louis county, Minn., and in such explorations expended $17,868.50, upon which property there was discovered by such explorations a body of iron ore, and said property became and was known, as herein referred to, as the Perkins property or mine. That thereupon the plaintiff applied to the fee owners, said Henry and Albert Stephens, for a mining lease upon said property pursuant to said option contract, which was executed by said fee owners, dated August 25, 1908, and was recorded in the office of said register of deeds on the 28th of December, 1908, in Book 6 of Agreements, on page 297, ran for 50 years, and carried a minimum annual output of 50,000 tons and a royalty of 30 cents per ton.

(9) That under date of September 1, 1908, the plaintiff subleased said premises last above described to John S. Lutes by lease recorded in Book 10 of Agreements, page 235, in the office of said register of deeds, which sublease ran for a period of 25 years from its date, and provided for a royalty of 75 cents per ton on iron ore, with a minimum annual output of 50,000 tons per year, or, in lieu thereof, the payment

of an advance royalty on said tonnage, the said royalty of 75 cents per ton, being an increase of 45 cents per ton over and above that which the Alworth-Stephens Company was required to pay the fee owners on said property, and as a further consideration for said sublease the said Lutes paid to said plaintiff the sum of $17,868.50, being the return of exploration expenditures made by the plaintiff on said lands. That the said Lutes thereupon assigned said lease to the Perkins Mining Company, which assumed the obligations thereof and operated said property until the ore therein was exhausted in September, 1919. That shortly after said Perkins Mining Company obtained said sublease the exploration of said premises was completed, and all the ore proved up, and it proceeded to strip the overburden of dirt and rock from said ore, so as to load the ore therein directly into railroad cars by the steam shovel open pit method, and said stripping was completed as to said property as early as the year 1912, and at that time all the ore therein was developed, and the amount in tonnage thereon was definitely known with substantial accuracy; the said stripping development of said mine making same very valuable as it stood in 1912.

### Hudson Mine.

(10) That in July, 1908, the said Alworth-Stephens Company granted to one H. G. Dalton, of Cleveland, Ohio, as trustee, an option until August 1, 1909, to explore and take out a mining lease upon certain lands, including N. W. 1/2 of N. W. 1/4 of section 4, township 58, range 15, St. Louis county, Minn., which is a part of the lands which said plaintiff held under its exploratory option contract. That said Dalton thereupon assigned his option to the Syracuse Mining Company, which company expended considerable sums in exploration, and surrendered all of the lands under its option, except the said N. W. 1/4 of N. W. 1/4 of section 4, township 58, range 15, upon which a body of ore was discovered and the mining lease called for. That thereupon the fee owners of the said property, pursuant to said plaintiff's option contract, executed to the plaintiff a mining lease, dated March 12, 1909, recorded April 19, 1909, in Book 6 of Agreements, on page 402, in the office of said register of deeds, which was for 50 years, with a minimum yearly output of 25,000 tons, and thereupon plaintiff executed to said Syracuse Mining Company a sublease on said property, dated March 12, 1909, recorded April 19, 1909, in Book 6 of Agreements, page 408, in the office of said register of deeds, running for 49 years, with 50,000 tons per year minimum, and said property became and was known as the Hudson property or mine. That the royalty provided for in the lease from the fee owners to the plaintiff was 30 cents per ton, and the royalty provided for in the sublease from the plaintiff to said Syracuse Mining Company was 60 cents per ton, being an increase of 30 cents over that provided for in the lease from the fee owners to the plaintiff.

(11) That upon the taking of said sublease by said Syracuse Mining Company said company proceeded to strip the overburden from the ore on said property, and to complete the exploration thereon, and as early as the year 1912 had completed said stripping, and had thoroughly explored said property, so that the tonnage of ore therein was definitely known with substantial accuracy, and the same was ready

for mining by the open pit steam shovel method, into railroad cars, which development had rendered said property as it stood in 1912 very valuable.

(12) On March 1, 1913, both the Perkins and Hudson properties or mines therefore had been thoroughly explored, the overburden had been stripped, and the ore therein was ready for mining by steam shovel operation, and that on said date, considering the tonnage thereof being definitely known and developed, it was known that the ore therein would be completely mined out and exhausted within a period of 7 years from that date, and that it would be mined and removed and paid for by the said sublease at least as fast as in equal annual installments during said seven year period. That the plaintiff from the year 1908 to and including the year 1917 was the owner through said leases of a property interest in said Perkins mine, and from the year 1909 to and including the year 1917 was the owner of a property interest in said Hudson mine. That on March 1, 1913, and ever since said date, to and including the whole of the year 1917, the fair market value of the ore in each of said mines, and the fair market value in the mine of the products thereof, and of each ton therein, was considerably upwards of 75 cents per ton, and that the fair market value on March 1, 1913, of the plaintiff's property interest in the ore in said Perkins mine was not less than 32.355 cents per ton, and of the plaintiff's property interest in the ore in said Hudson mine was not less than 21.57 cents per ton, in each case for each and every ton therein, and which was thereafter removed and paid for; the said fair market value of plaintiff's property interest in said ore in said mines on March 1, 1913, being ascertained by multiplying the total number of tons in the Perkins mine by the net royalty of 45 cents per ton, and the total number of tons in the Hudson mine by 30 cents per ton, to be received by the plaintiff, and considering the same as payable in equal annual installments for 7 years from March 1, 1913, and reducing the total amount so to be received to the present worth as of March 1, 1913, on a 9 per cent. discount basis, and then dividing said total March 1, 1913, value by the number of tons therein and so to be mined and paid for, which gives said amount of 32.355 cents per ton for each and every ton in said Perkins mine, and 21.57 cents per ton for each and every one in said Hudson mine. That inasmuch as the life of each of said mines, or period within which each was to be exhausted and the ore mined and paid for, was not more than 7 years from March 1, 1913, and as the ore was to be mined and paid for quarterly in equal annual installments during said period, it follows that the March 1, 1913, value of each dollar which the plaintiff would receive during the life of said mines for its net property interest was 71.9 cents, and that the March 1, 1913, value of the plaintiff's property interests in each of said mines was 71.9 per cent. of the total royalties that it would receive, and was 71.9 per cent. of the royalty which it would receive on each ton therein when mined, removed, and paid for.

(13) That for the year 1917 the reasonable allowance for depletion to which the plaintiff was entitled as to each of said mines was 71.9 cents for each dollar of net royalties which it received for said year, and which it had left after paying the fee owners for said royalties

due to such fee owners, and from each dollar of such net royalties so received by it, it was entitled to deduct as and for the reasonable amount for depletion the sum of 71.9 cents in arriving at its net taxable income for said year 1917. That no allowance made to the plaintiff prior to the year 1917 had equaled the fair market value of the plaintiff's property interest in said mines, or either of them, as of March 1, 1913, and that the said allowances herein provided for during the year 1917, plus any and all allowances theretofore made, did not equal the fair market value as of March 1, 1913, of the plaintiff's property interest in said mines, or either of them. That the said allowances for depletion, to be deducted as herein set forth, do not exceed the fair market value in the mine of the product thereof, which was mined and sold and paid for during the year 1917, for which the computation herein set forth is made, which market value of said product so mined, sold, and paid for during said year 1917 was in fact in excess of the full amount of all royalties received by the plaintiff from its said lessee, including those which the plaintiff was required to pay to said fee owners.

(14) That the total amount of the net royalties which the plaintiff received from said properties for the year 1917, and which were left and belonged to it after it had paid therefrom all royalties due from it to the fee owners, was $77,505.98, and that it had no receipts during said year from any other source whatsoever. That its invested capital for and during said year 1917 was not to exceed $25,000, represented by its certificates of capital stock outstanding; it being true that during the year 1917 said company did not employ any capital in any operations in its business or to produce its income for said year, and it also being true that prior to 1917 the company had paid out to its stockholders several times the amount which originally had been put into said company for said stock, and it being true that if the original $25,000 so paid in be considered as being returned to its stockholders ratably per ton as the ore was mined and paid for, according to the total tonnage in the properties, there was left on the 1st of January, 1917, only about $4,500 still unreturned, and if it be considered that its invested capital was the total sum of $40,068 expended for exploration, plus the sum of $1,266.86 expended for other small items as set forth in paragraph 3 hereof, which were the only sums it ever spent, and that said sum was returned ratably per ton as the ore was mined and paid for, in proportion to the total tonnage, then said company, on January 1, 1917, had only about $7,500 remaining still undistributed. That from said total net receipts of $77,505.98 for said year 1917 the said plaintiff was entitled to the said reasonable allowance of 71.9 per cent. of said receipts as depletion, amounting to $55,726.80, leaving its net taxable income for said year the sum of $21,779.18. That the income tax on said amount for said year at the rates specified in the law was $735.70, and the war and excess profits tax on which was $9,517.51, or a total income and excess and war profits tax of $10,253.21. That the computation of said tax is as set forth in Exhibit A, hereto attached.

(15) That for said year 1917 the plaintiff paid to E. J. Lynch, collector of internal revenue for the district of Minnesota, within the time re-

quired by law, as and for internal revenue taxes for that year, $10,-
253.21, which was the full amount due from plaintiff for taxes for said
year, and which said sum was paid on the 10th day of June, 1918.
That thereafter the said E. J. Lynch, collector, and the Department of
Internal Revenue, made additional demands upon this plaintiff for the
payment of additional amounts, and demanded of this plaintiff that
it pay an additional tax amounting to $17,128.44, which, pursuant to
said wrongful demand, this plaintiff did pay to said E. J. Lynch on the
21st day of February, 1919, making a total paid by this plaintiff for the
income and war and excess profits taxes for the calendar year 1917 of
$27,381.65. That at the time of making said payment of $17,128.44
this plaintiff protested to said E. J. Lynch and the said Internal
Revenue Department against the execution of said tax, and paid the
same under protest, and in April, 1919, filed its appeal with the Com-
missioner of Internal Revenue for claim for refund of the taxes er-
roneously exacted from this plaintiff, and the said claim for refund
and appeal was disallowed and objected to by the said E. J. Lynch and
the Internal Revenue Department, and this suit was commenced with-
in the time required by law. That said plaintiff was. required to and
did pay $17,128.44 internal revenue taxes for the year 1917 in excess
of the amount which it was required by law to pay, which payment, as
aforesaid, was made on the 21st day of February, 1919.

(16) That, all the ore in the Perkins property having been previous-
ly mined out, the said Perkins Mining Company, on the 20th of Sep-
tember, 1919, released to the plaintiff herein all of the lands covered by
its sublease, which release was recorded September 24, 1919, in Book
20 of Agreements, page 447, in the office of said register of deeds, and
that thereupon the plaintiff herein released said premises to the fee
owners thereof by instrument dated December 26, 1919, duly record-
ed in Book 20 of Agreements, on page 503, in the office of said register
of deeds.

(17) That on the 20th day of December, 1918, all of the ore on the
said Hudson property or mine having been mined out, the said Syra-
cuse Mining Company released the said lands to the plaintiff herein,
which release was recorded December 30, 1918, in Book 22 of Agree-
ments, on page 135. That thereupon the plaintiff herein on January
31, 1919, released said property known as the Hudson mine to the fee
owners, which release was recorded on that date in Book 23 of Agree-
ments, on page 51, in the office of said register of deeds.

(18) That all of the ore in both of said properties was mined out and
paid for within 7 years from March 1, 1913. That the foregoing con-
stitutes the actual transactions of the plaintiff pertaining to its 1917 tax
obligation, and the correct basis upon which the court finds that its
tax for said year should be figured. The value of plaintiff's March 1,
1913 property is being reckoned on a 9 per cent. discount basis, to the
end that the principles and computation may be simplified, instead of
using the 10 per cent. basis on the Perkins mine and the 8 per cent. on
the Hudson mine, which might be permissible under the evidence, the
result in either case being practically the same. It is deemed unneces-
sary, and tending to confuse, rather than clarify the issues, to set forth

in detail the contentions or claims which were from time to time made by both the government and the plaintiff.

As conclusions of law it is found: That the plaintiff is entitled to have and recover of and from the defendant the sum of $17,128.44, with interest thereon from the 21st day of February, 1919, at the rate of one-half of 1 per cent. per month, together with the costs and disbursements of this action.

Let judgment be rendered and entered accordingly.

Stay of execution for 42 days after entry of judgment granted, to enable defendant to sue out writ of error or take such other action as she may be advised.

### Exhibit A.

### ALWORTH-STEPHENS COMPANY

#### Computation of Tax for Year 1917

| | |
|---|---|
| Net receipts from Perkins lease | $40,896.99 |
| Net receipts from Hudson lease | 36,608.99 |
| Total net receipts—1917 | $77,505.98 |
| Deduct 71.9 per cent. of said receipts as depletion or return of capital assets as established March 1, 1913 | 55,726.80 |
| Balance income for 1917 | $21,779.18 |

Excess profits calculation:

| | |
|---|---|
| 15 per cent. of invested capital $25,000 is | 3,750.00 |
| 5 per cent. of invested capital (15–20 per cent.) is | 1,250.00 |
| 5 per cent. of invested capital (20–25 per cent.) is | 1,250.00 |
| 8 per cent. of invested capital (25–33 per cent.) is | 2,000.00 |
| Balance above 33 per cent. | 13,529.18 |
| Total income—1917 | $21,779.18 |

| | | |
|---|---|---|
| From total of first and second items of taxable profits or | | $ 5,000.00 |
| Deduct 7 per cent. of capital | $1,750.00 | |
| Specific deduction | 3,000.00 | 4,750.00 |
| Balance taxable at 25 per cent. | | $ 250.00 |

| | |
|---|---|
| $250.00 taxable at 25 per cent. | $ 62.50 |
| $1,250.00 taxable at 35 per cent. | 437.50 |
| $2,000.00 taxable at 45 per cent. | 900.00 |
| $13,529.18 taxable at 60 per cent. | 8,117.51 |
| Total excess profits tax | $ 9,517.51 |
| Total income as shown above | $21,779.18 |
| Less excess profits tax | 9,517.51 |
| Balance taxable at 6 per cent. | $12,261.67 |
| 6 per cent. of $12,261.67 | $ 735.70 |
| Plus excess profits tax | 9,517.51 |
| Total tax payable | $10,253.21 |
| Amount assessed and paid | $27,381.65 |
| Amount that should have been assessed | 10,253.21 |
| Amount overpaid | $17,128.44 |

## Memorandum.

[1]. In this case, after careful consideration of the briefs, I am of the opinion that under the terms of the law in force in 1917, which permitted only net income to be taxed, the plaintiff was entitled, in figuring its net income and excess profits tax, to a depletion to the extent of the market value in the mine of the product thereof mined and paid for during the year, but that depletion should be figured on a risk rate basis of 10 per cent. on the Perkins mine and 8 per cent. on the Hudson mine, or an average of 9 per cent., instead of on a 6 percent. basis, as contended for by plaintiff; the life of each mine being seven years.

[2] I do not think there can be any question but that on the 1st of March, 1913, the plaintiff owned a valuable property interest or right in both of these mines, and that the value of the property interest or right was approximately capable of definite ascertainment and should be determined on the basis above indicated. The plaintiff on the 1st of March, 1913, owned this property interest or right, and has ever since owned it. It could have sold it on that day for an amount calculated on the above indicated basis, and surely until the part of that amount represented by the ore taken out is deducted, there could be no net income or profit on such ore taken out. This allowance or deduction for depletion would not be a deduction for depletion as against the owner. Under the evidence in this case, both the fee owner and the plaintiff would be entitled to such deduction, and both could get such deduction in full as to the ore taken out, without exceeding the market value of such ore in the mine as of the 1st of March, 1913.

[3] I am also of the opinion that the invested capital of the company was, in 1917, $25,000, and that the invested capital could not be said to be not more than a nominal capital, and that therefore the levy and assessment could not be made under either sections 209 or 210 of the act (Comp. St. §§ 6336⅜j, 6336⅜k), but must be made under section 201 (section 6336⅜b).

In short, I am of the opinion that the levy and assessment should have been made by first allowing depletion upon the basis above indicated, and then determining the amount to be paid by considering the plaintiff as a corporation having an invested capital of $25,000.