FELLOWS MEDICAL MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5592, 8980.   Promulgated February 19, 1927.

1. Shares of stock authorized to be issued by a corporation on March 9, 1917, were not " outstanding " on March 3, 1917.

2. In 1916 the petitioner acquired the assets of a Canadian corporation having a fair market value of $7,000,000 for $200,000 par value capital stock, with an understanding on the part of all concerned that additional shares would be issued to its stockholders as soon as the fair value of such assets had been determined and authority had been obtained for the issuance of them. *Held*, that the $200,000 capital stock was issued " at a nominal value " within the meaning of section 325(b) of the Revenue Act of 1918.

*Paul F. Myers, Esq.*, for the petitioner.
*A. R. Marrs, Esq.*, for the respondent.

This proceeding is for the redetermination of deficiencies in income and profits tax for the calendar years 1918 and 1919 in the amounts of $144,611.19 and $90,457.94, respectively. Separate petitions were filed for each year. The cases were consolidated for the purpose of the hearing and decision. The issues are (1) whether capital stock of a par value of $10,000,000 was " outstanding " on March 3, 1917, within the meaning of section 326(a)(4) of the Revenue Act of 1918, and (2) in the event that it is held that capital stock of $10,000,000 was not " outstanding " on March 3, 1917, whether the stock of the petitioner was issued at a " nominal value " within the meaning of section 325(b) of the Revenue Act of 1918, and the par value of the stock for the purposes of section 326(a)(4) of the same Act should be deemed to be the fair market value of said stock on May 1, 1916, the date of its issuance.

FINDINGS OF FACT.

1. The Fellows Medical Manufacturing Co., Ltd., (hereafter called the Canadian corporation), was incorporated in the year 1876, under the laws of the Dominion of Canada, with a capital stock of $100,000, consisting of 100 shares of a par value of $1,000 each. It was organized for the purpose of engaging in the business of manufacturing and selling " Fellows Compound Syrup of Hypophosphites," a drug product, under a formula transferred to it which had been invented by James I. Fellows in about 1866. The Canadian corporation conducted the business from the year 1876 until May 1, 1916, when it was succeeded by the petitioner corporation.

2. In 1901 the Canadian corporation reduced the par value of its shares of stock from $1,000 to $100 each and increased the number

of its shares from 100 to 1,000. In 1907 the par value of its shares was further reduced to $50 each and the number of shares was increased from 1,000 to 2,000. The par value was reduced only to facilitate the distribution of the stock among the heirs of owners who died.

3. The business of the Canadian corporation in countries engaged in the European War fell off during the years 1914, 1915, and 1916. As about four-fifths of the stockholders were American citizens and the principal business of the corporation was in the United States, it was decided in 1916 to reincorporate under the laws of the United States. Accordingly, the stockholders of the Canadian corporation caused the petitioner to be incorporated under the laws of the State of New York on April 15, 1916, for the purpose of taking over all of the assets and continuing the business of the Canadian corporation. No intangible value was carried on the books of the Canadian corporation. It was recognized, however, by its stockholders and directors that the Canadian corporation possessed intangible assets of great value that were not capitalized and discussions had taken place among them as to such values. Frederick A. H. Anger, general manager and secretary-treasurer of the corporation, and Tracy H. Harris, a director and representative of one group of stockholders, had formed their opinions prior to 1916 that the intangible property had a value of approximately $10,000,000. The directors discussed the amount of capitalization of the new corporation and decided that, pending the determination of the actual value of the assets, the new corporation should be formed with the same number of shares, namely, 2,000, as the Canadian corporation had, except that the par value of each share should be $100 instead of $50. It was understood that later the stock would be increased to correspond with the value of the assets as then determined.

4. The petitioner is a corporation organized and existing under and by virtue of the laws of the State of New York. It was organized, as above indicated, on April 15, 1916, with an authorized capital stock of $200,000, divided into 2,000 shares of $100 par value each. The first meeting of the incorporators and subscribers to the capital stock was held April 17, 1916. At this meeting the written offer by the Canadian corporation to transfer its assets to the American company in exchange for the capital stock of the latter was considered and accepted. This letter provided in part:

It hereby offers to sell, assign, and convey to your Company by a good and sufficient bill of sale and warranty, the above-mentioned business, including all its right, title, and interest in and to the same and the good will thereof and the stock on hand at home and abroad, and in the process of manufacture, raw materials, tools, machines, trademarks, tradenames, brands, formulae, books, bills and accounts receivable, contracts and personal property of every

name and description used in the conduct of said business and owned by the said corporation, and to accept in consideration and full payment for the said sale, transfer, and conveyance, two thousand (2,000) shares of the par value of $100. each of the capital stock of your company, being its entire issue, and also the assumption by your Company of its outstanding indebtedness.

If this proposition is accepted, the said shares of stock are to be issued to the Stockholders of The Fellows Medical Manufacturing Company, Limited, of Canada, in proportion to the number of shares held by them in this Company.

The resolution accepting the offer contained the following provision carrying forward the understanding that later stock would be issued to correspond to the value of the assets which were being exchanged for stock:

FURTHER RESOLVED, That in the judgment of the Incorporators of this Company, the said assets transferred by said Fellows Medical Manufacturing Company, Limited, and mentioned in the said bill of sale, being of much greater value than represented by the present capital stock this Company reserves the right to increase its capital stock from the present amount to the amount of the actual value of the said assets.

5. On the same day, April 17, 1916, a meeting of the directors of the petitioner was held and the last above quoted resolution was contained in the resolution accepting the said offer.

6. Pursuant to the offer on the part of the Canadian corporation and the acceptance on the part of the petitioner, there was transferred on May 1, 1916, to the petitioner by the Canadian corporation all of its assets, both tangible and intangible, and at the same time the petitioner, in exchange for such assets, issued 2,000 shares, its entire capital stock, to the stockholders of the Canadian corporation in proportion to their stock holdings in the Canadian corporation. The assets transferred to the petitioner included tangible assets worth approximately $345,000. The remaining assets consisted of intangible property.

7. Various discussions concerning the value of the assets acquired by the petitioner were held by individual directors and stockholders of the corporation between May, 1916, and January, 1917. On January 18, 1917, the directors of the petitioner held a meeting at which they passed the following resolution:

FURTHER RESOLVED, that in the judgment of the Incorporators of this Company, the said assets transferred by said Fellows Medical Manufacturing Company, Limited, and mentioned in the said bill of sale, being of much greater value than represented by the present capital stock, this Company reserves the right to increase its capital stock from the present amount to the amount of the actual value of the said assets.

Now be it RESOLVED, that in the judgment of the Board of Directors the actual value of the said assets of said Company did then and do now amount to the sum of $10,000,000; further

RESOLVED, that the capital stock of this company be increased from $200,000, consisting of 2,000 shares of the par value of $100. each to $10,000,000, to consist of 100,000 shares of the par value of $100. each; further

RESOLVED, that the above increase of 98,000 shares of stock (fully paid and non-assessable) be issued to stockholders of record at the close of business on February 23rd, 1917, in proportion to their holdings, being the amount of their share of the capital assets (represented by the said shares of stock) to which they were entitled when the said assets were transferred to the Company, in addition to the shares they now hold; further

RESOLVED, that the total amount of assets transferred to the corporation when it was organized amounting in value to the sum of $10,000,000. represents assets accrued prior to March 1st, 1913; further

RESOLVED, that the Treasurer of the Company be authorized to make the following entry in the books of the Company:—

" Surplus assets not heretofore capitalized, being cash value of secret formulae, goodwill, trade-mark, process of manufacture etc., acquired from Fellows Medical Manufacturing Co., Limited, $9,800,000."
further

RESOLVED, that a Special Meeting of the Stockholders of this Company be held on the 23rd day of February, 1917, at 3 o'clock in the afternoon at the office of the Company, No. 26 Christopher Street, in the Borough of Manhattan, City of New York, for the purpose of voting on a proposition to increase its capital stock from $200,000, consisting of 2,000 shares of the par value of $100. each to $10,000,000. to consist of 100,000 shares of the par value of $100. each.

The members of the board of directors represented about four-fifths of the stockholders of the corporation. ·

8. On February 23, 1917, the stockholders of the petitioner held a special meeting for the purpose of passing upon said increase and the matter was discussed. All those present were ready to vote in favor of the increase but, at the request of one of the members representing an estate in Connecticut, the meeting was adjourned for two weeks until he could see his co-trustee in Connecticut. At this meeting more than a majority of the shares of the stock of the corporation were represented by proxies, which contained specific authorization to vote in favor of the increase of the capital stock to $10,000,000 par value. Later these proxies were turned over to the tellers of said meeting and counted.

9. On March 9, 1917, the stockholders of the petitioner met again and approved an increase of its capital stock from the par value of $200,000 to the par value of $10,000,000 and said increase was then made pursuant to law.

10. The shares of stock of the Canadian corporation and of the petitioner were owned by the members of about five different families. There were no sales of the stock of either corporation around the year 1916. The net earnings of the business gradually increased from 1876 to 1916, inclusive, with the exception of a small decline in the years 1914, 1915, and 1916, due to the difficulties of delivering orders to foreign countries engaged in the war. For the ten years prior to and including the year 1916 the net earnings ranged from $711,088 to $841,482.50, and the dividends paid during those years ranged from $715,000 to $840,000 per year.

11. The product of the petitioner and of its predecessor, the Canadian corporation, namely, " Fellows Compound Syrup of Hypophosphites," has never been advertised before the public but was only advertised in medical journals and was sold only to medical, nursing, and dental professions.

12. The actual cash value of the assets acquired by the petitioner in exchange for its entire capital stock was $7,000,000, of which more than $6,500,000 was the value of intangibles, and the fair market value of the petitioner's stock outstanding on March 3, 1917, was $7,000,000.

13. In its income-tax returns for the years 1918 and 1919 the petitioner included in the statutory invested capital 25 per cent of $10,-000,000 for intangibles paid in for shares of stock. The Commissioner held that the petitioner was entitled to include in its statutory invested capital for intangibles 25 per cent of $200,000, the amount of stock that was actually issued and outstanding as a matter of record on March 3, 1917. The excess-profits tax liability for each year has been determined by the Commissioner under the provisions of section 328 of the Revenue Act of 1918, and the deficiencies are based upon such determinations.

### OPINION.

SMITH: The petitioner alleges error on the part of the Commissioner in determining deficiencies for the years 1918 and 1919 upon the ground (1) that the Commissioner erred in finding that the amount which may be included in the invested capital for the purpose of determining profits tax for the years 1918 and 1919, on account of intangible property transferred to the corporation at the time of its organization in 1916, is limited to 25 per cent of $200,000 par value of its capital stock, and that there may not be included in the invested capital on account of such intangible property any portion of the remaining capital stock of the corporation of a par value of $9,800,000; and (2) that the Commissioner erred in selecting as comparatives, in applying the provisions of sections 327 and 328 of the Revenue Act of 1918 for the purpose of determining profits tax liability, corporations which the petitioner believes are not truly representative of the situation of the petitioner and which the petitioner believes paid a higher rate of profits tax for the year 1918 than that paid by truly representative corporations.

The petitioner has adduced no evidence with respect to the second allegation of error in its petition and therefore it will not be further considered.

With respect to the first allegation of error the petitioner makes two contentions, first, that $10,000,000 capital stock was outstanding on March 3, 1917, within the purview of section 326(a) (4) of the

Revenue Act of 1918, and, second, that, if it should be held that only $200,000 was outstanding on that date, then the stock of the petitioner was issued at a "nominal value" within the meaning of subdivision (b) of section 325 of the Revenue Act of 1918, and that the par value of the stock for the purposes of section 326 (a) (4) of the taxing statute should be deemed to be the fair market value of said stock on May 1, 1916, the date of its issuance.

Section 326 (a) (4) of the Revenue Act of 1918 permits the inclusion in invested capital of:

Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest.

Under the agreed statement of facts filed by the parties to the proceeding, the stockholders voted for an increase in the capital stock from $200,000 to $10,000,000 on March 9, 1917. A certificate evidencing the vote of the stockholders for an increase in capital stock was not filed with the Secretary of State of New York until after the meeting of the stockholders on March 9, 1917. The filing of such a certificate was a prerequisite to an increase of the capital stock. We can see no merit in the argument that shares of stock of the petitioner corporation were "outstanding" on March 3, 1917, in excess of the amount authorized by its charter on that date. In the opinion of the Board, the "outstanding" capital stock of the petitioner corporation on March 3, 1917, was the $200,000 capital stock issued in 1916, and no more.

On behalf of the petitioner it is argued that if it be held that stock of the corporation of the par value of $10,000,000 was not outstanding on March 3, 1917, but that stock of a par value of $200,000 only was outstanding on that date, then the case comes within the provisions of section 325 (b) of the Act and that the 25 per cent limitation on the inclusion of intangible values in invested capital should be applied to the fair market value of the stock at the time of its issuance on May 1, 1916.

Section 325 (b) of the taxing act above referred to provides:

For the purposes of this title, the par value of stock or shares shall, in the case of stock or shares issued at a nominal value or having no par value, be deemed to be the fair market value as of the date or dates of issue of such stock or shares.

This provision is new to the Revenue Act of 1918. It has no counterpart in the Revenue Acts of March 3, 1917, and October 3, 1917. Those Acts fail to state how the limitation upon the inclusion of intangibles in invested capital shall be computed in the case of a corporation with shares of stock having no par value. The defect of the

Act of October 3, 1917, was attempted to be cured by a regulation of the Commissioner. In article 58 of Regulations 41, it was provided:

Intangible property bona fide purchased prior to March 3, 1917, with stock having no par value may be included in invested capital at a value not exceeding the actual cash value of such intangible property at time of the purchase and in an amount not exceeding 20 per cent of the total shares of stock outstanding on March 3, 1917, measured by their value as at the date or dates of issue.

Section 325(b) of the Revenue Act of 1918 was undoubtedly intended to remedy the defects of the earlier law. In doing so it not only provided for the case of stock or shares having no par value, but also for the case of those issued " at a nominal value." This phrase appears never to have been judicially construed.

Section 209 of the Revenue Act of 1917 provides:

That in the case of a trade or business having no invested capital or not more than a *nominal capital*, there shall be levied * * * a tax equivalent to eight per centum of the net income of such trade or business * * *. (Italics ours.)

The term " nominal capital " contained in the above section was defined by the Commissioner in his regulations as meaning, " in general a small or negligible capital whose use in a particular trade or business is incidental." (Article 74, Regulations 41.) A number of corporations claimed that they had " no invested capital, or not more than a nominal capital," within the meaning of section 209, and when their claims were denied by the Commissioner, they brought suit for the recovery of taxes alleged to have been illegally exacted. The courts held this section applicable to many corporations which had no invested capital or only a small invested capital. *Porter* v. *Lederer*, 267 Fed. 739; *Cartier* v. *Doyle*, 277 Fed. 150; *R. H. Martin, Inc.* v. *Edwards*, 293 Fed. 258; *De Laski & Thropp Co.* v. *Iredell*, 268 Fed. 377; *Empire Fuel Co.* v. *Hayes*, 295 Fed. 704. They denied the application of the section to a corporation which sold stock for cash, *Alworth-Stephens Co.* v. *Lynch*, 278 Fed. 959, and to one which issued stock for a secret process and machinery, *Lincoln Chemical Co.* v. *Edwards*, 272 Fed. 142; (C. C. A.) 289 Fed. 458. In the last named case the higher court said:

It must be admitted that, if the corporation can show that on January 1, 1917, it had no " invested capital," * * * within the meaning of section 209, it was entitled to be assessed under that section. We think it clearly appears that at the time above mentioned the company had some invested capital, and therefore was not entitled to be assessed under the section referred to.

In all of the above decisions it is apparent that the term " nominal capital " was construed with reference to the language with which it was associated. The decisions are not particularly persuasive as

to the meaning of the word "nominal," contained in section 325(b) of the Revenue Act of 1918.

Much might be said in support of the proposition that by the phrase "at a nominal value" Congress intended to reach only those cases where stock or shares were issued at a nominal *par* value, as, for instance, where the shares were issued with the minimum par value allowed by statute, and that it was never the intention of Congress that stock issued with a par value of $100 per share should be regarded as having been issued "at a nominal value." It is to be noted, however, that Congress did not use the phrase "at a nominal par value" but "at a nominal value." It must be presumed that Congress used this language advisedly, and that if it had meant to cover only the case of shares of stock issued at a nominal par value it would have used language which would clearly have expressed that thought.

The term "nominal" is defined in Webster's Dictionary as follows:

Existing in name only; not real or actual; merely named, stated, or given, without reference to actual conditions;—often with the implication that the thing named is so small, slight, or the like, in comparison to what might properly be expected, as scarcely to be entitled to the name; as, a *nominal* difference; a *nominal* price.

In our opinion stock or shares are issued "at a nominal value" when issued at an insignificant or negligible value, as compared with their true value. The term "nominal" is the opposite of "substantial." The question before us is whether the $200,000 par value of capital stock issued by the petitioner was an insignificant or negligible amount in comparison with the value of the assets acquired or with the true market value of the shares that were issued. We think that it was. All of the evidence goes to show that the incorporators were not concerned with issuing an amount of capital stock which at all corresponded with the value of the assets acquired. The Canadian corporation, the petitioner's predecessor, had 2,000 shares of stock outstanding, and for convenience the petitioner corporation was organized with the same number of shares, although the par value of each share was double that of each share of the Canadian corporation. The value was, however, purely "nominal." This is shown by the fact that the incorporators expressly reserved the right to issue additional shares of stock as soon as it could be determined just what the fair value of the assets acquired was. In the light of the entire record we think that the stock was issued at a nominal value within the meaning of section 325(b) of the Revenue Act of 1918, and that the fair market value of the 2,000 shares of stock issued was $7,000,000.

*Judgment will be entered on 15 days' notice, under Rule 50.*