*236 OPINION.
Smith:
The petitioner alleges error on the part of the Commissioner in determining deficiencies for the years 1918 and 1919 upon the ground (1) that the Commissioner erred in finding that the amount which may be included in the invested capital for the purpose of determining profits tax for the years 1918 and 1919, on account of intangible property transferred to the corporation at the time of its organization in 1916, is limited to 25 per cent of $200,000 par value of its capital stock, and that there may not be included in the invested capital on account of such intangible property any portion of the remaining capital stock of the corporation of a par value of $9,800,000; and (2) that the Commissioner erred in selecting as comparatives, in applying the provisions of sections 327 and 328 of the Revenue Act of 1918 for the purpose of determining profits tax liability, corporations which the petitioner believes are not truly representative of the situation of the petitioner and which the petitioner believes paid a higher rate of profits tax for the year 1918 than that paid by truly representative corporations.
The petitioner has adduced no evidence with respect to the second allegation of error in its petition and therefore it will not be further considered.
With respect to the first allegation of error the petitioner makes two'contentions, first, that $10,000,000 capital stock was outstanding on March 3, 1917, within the purview of section 326(a) (4) of th§ *237 Revenue Act of 1918, and, second, that, if it should be held that only $200,000 was outstanding on that date, then the stock of the petitioner was issued at a “ nominal value ” within the meaning of subdivision (b) of section 325 of the Revenue Act of 1918, and that the par value of the stock for the purposes of section 326 (a) (4) of the taxing statute should be deemed to be the fair market value of said stock on May 1,1916, the date of its issuance.
Section 326(a) (4) of the Revenue Act of 1918 permits the inclusion in invested capital of:
Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest.
Under the agreed statement of facts filed by the parties to the proceeding, the stockholders voted for an increase in the capital stock from $200,000 to $10,000,000 on March 9,1917. A certificate evidencing the vote of the stockholders for an increase in capital stock was not filed with the Secretary of State of New York until after the meeting of the stockholders on March 9, 1917. The filing of such a certificate was a prerequisite to an increase of the capital stock; We can see no merit in the argument that shares of stock of the petitioner corporation were “outstanding” on March 3, 1917, in excess of the amount authorized by its charter on that date. In the opinion of the Board, the “ outstanding ” capital stock of the petitioner corporation on March 3, 1917, was the $200,000 capital stock issued in 1916, and no more.
On behalf of the petitioner it is argued that if it be held that stock of the corporation of the par value of $10,000,000 was not outstanding on March 3, 1917, but that stock of a par value of $200,000 only was. outstanding on that date, then the case comes within the provisions of section 325(b) of the Act and that the 25 per cent limitation on the inclusion of intangible values in invested capital should be applied to the fair market value of the stock at the time of its issuance on May 1, 1916.
Section 325(b) of the taxing act above referred to provides:
For the purposes of this title, the par value of stock or shares shall, in the ease of stock or shares issued at a nominal value or having no par value, be deemed to be the fair market value as of the date or dates of issue of such stock or shares.
This provision is new to the Revenue Act of 1918. It has no counterpart in the Revenue Acts of March 3, 1917, and October 3, 1917. Those Acts fail to state how the limitation upon the inclusion of intangibles in invested capital shall be computed in the case of a corporation with shares of stock having no par value. The defect of the *238 Act of October 3, 1917, was attempted to be cured by a regulation of the Commissioner'. In article 58 of Regulations 41, it was provided:
Intangible property bona fide purchased prior to March 3, 1917, with stock having no par value may be included in invested capital at a value not exceeding the actual cash value of such intangible property at time of the purchase and in an amount not exceeding 20 per cent of the total shares of stock outstanding on March 3, 1917, measured by their value as at the date or dates of issue.
Section 325(b) of the Revenue Act of 1918 was undoubtedly intended to remedy the defects of the earlier law. In doing so it not only provided for the case of stock or shares having no par value, but also for the case of those issued “ at a nominal value.” This phrase appears never to have been judicially construed.
Section 209 of the Revenue Act of 1917 provides:
That in the case of a trade or business having no invested capital or not more than a nominal capital, there shall be levied * * * a tax equivalent to eight per centum of the net income of such trade or business * * *. (Italics ours.)
The term “ nominal capital ” contained in the above section was defined by tlTe Commissioner in his regulations as meaning, “ in general a small or negligible capital whose use in a particular trade or business is incidental.” (Article 74, Regulations 41.) A number of corporations claimed that they had “no invested capital, or not more than a nominal capital,” within the-meaning of section 209, and when their claims were denied by the Commissioner, they brought suit for the recovery of taxes alleged to have been illegally exacted. The courts held this section applicable to many corporations which had no invested capital or only a small invested capital. Porter v. Lederer, 267 Fed. 739; Cartier v. Doyle, 277 Fed. 150; R. H. Martin, Inc. v. Edwards, 293 Fed. 258; De Laski & Thropp Co. v. Iredell, 268 Fed. 377; Empire Fuel Co. v. Hayes, 295 Fed. 704. They denied the application of the section to a corporation which sold stock for cash, Alworth-Stephens Co. v. Lynch, 278 Fed. 959, and to one which issued stock for a secret process and machinery, Lincoln Chemical Co. v. Edwards, 272 Fed. 142; (C. C. A.) 289 Fed. 458. In the last named case the higher court said:
It must, be admitted that, if the corporation can show that on January 1, 1917, it had no “ invested capital,” * * * within the meaning of section 209, it was entitled to be assessed under that section. We think it clearly appears that at the time above mentioned the company had some invested capital, and therefore was not entitled to be assessed under the section referred to.
In all of the above decisions it is apparent that the term “ nominal capital ” was construed with reference to the language with which it was associated. The decisions are not particularly persuasive as *239 to the meaning of the word “nominal,” contained in section 325(b) of the Revenue Act of 1918.
Much might be said in support of the proposition that by the phrase “ at a nominal value ” Congress intended to reach only those cases where stock or shares were issued at a nominal par value, as, for instance, where the shares were issued with the minimum par value allowed by statute, and that it was never the intention of Congress that stock issued with a par value of $100 per share should be regarded as having been issued “ at a nominal value.” It is to be noted, however, that Congress did not use the phrase “ at a nominal par value ” but “ at a nominal value.” It must be presumed that Congress used this language advisedly, and that if it had meant to cover only the case of shares of stock issued at a nominal par value it would have used language which would clearly have expressed that thought.
The term “ nominal ” is defined in Webster’s Dietionary as follows :
Existing in name only; not real or actual; merely named, stated, or given, without reference to actual conditions; — often with the implication that the thing named is so small, slight, or the like, in comparison to what might properly be expected, as scarcely to be entitled to the name; as, a nominal difference; a nominal price.
In our opinion stock or shares are issued “ at a nominal value ” when issued at an insignificant or negligible value, as compared with their true value. The term “ nominal ” is the opposite of “ substantial.” The question before us is whether the $200,000 par value of capital stock issued by the petitioner was an insignificant or negligible amount in comparison with the value of the assets acquired or with the true market value of the shares that were issued. We think that it was. All of the evidence goes to show that the incorporators were not concerned with issuing an amount of capital stock which at all corresponded with the value of the assets acquired. The Canadian corporation, the petitioner’s predecessor, had 2,000 shares of stock outstanding, and for convenience the petitioner corporation was organized with the same number of shares, although the par value of each share was double that of each share of the Canadian corporation. The value was, however, purely “ nominal.” This is shown by the fact that the incorporators expressly reserved the right to issue additional shares of stock as soon as it could be determined just what the fair value of the assets acquired was. In the light of the entire record we think that the stock was issued at a nominal value within the meaning of section 325(b) of the Revenue Act of 1918, and that the fair market value of the 2,000 shares of stock issued was $7,000,000.
Judgment will 5e entered on 15 days’ notice, under Bule 50.