## ALEXANDER & GARRETT v. UNITED STATES.

District Court, S. D. Georgia, Augusta Division. July 26, 1927.

1. **Internal revenue ⊚⟞9(27)—Real estate and insurance soliciting corporation, using collections not remitted to owners to pay expenses, held to have only "nominal capital" (Revenue Act 1917, §§ 201, 207, 209 [Comp. St. §§ 6336⅜b, 6336⅜h, 6336⅜j]).**

Corporation engaged in real estate and fire insurance soliciting business, negotiating of loans, and some inspection business, and having capital stock of $75,000 representing good will only and a surplus of about $4,000, consisting of furniture, fixtures, automobiles, and cash, its advances to stockholders being largely in excess of surplus of each year, operating expenses being met chiefly by payment out of rents collected and not remitted to owners, *held* to have only "nominal capital," and was therefore taxable under Revenue Act 1917, § 209, and not under section 201, in view of section 207 (Comp. St. §§ 6336⅜j, 6336⅜b, 6336⅜h).

2. **Internal revenue ⊚⟞7(28)—Corporation carrying on real estate and insurance soliciting business out of surplus of previous years held "personal service corporation" (Revenue Act 1918, § 200 [Comp. St. § 6336⅛a]).**

Where only capital, if any, employed by corporation engaged in real estate and fire insurance soliciting business, negotiating of loans between borrowers and lenders, and some inspection work, was the surplus from business of previous years, and a sum largely in excess of such surplus was at all times in hands of its stockholders either as loans or advances, income of corporation being derived primarily from activities of stockholders, *held* that corporation was a "personal service corporation" within Revenue Act 1918, § 200 (Comp. St. § 6336⅛a).

At law. Action by Alexander & Garrett against the United States. Judgment for plaintiff.

Hull, Barrett & Willingham, of Augusta, for plaintiff.

Chas. L. Redding, U. S. Atty., of Savannah, Ga.

BARRETT, District Judge. By appropriate stipulation between counsel for the parties, this case is for determination as to the facts as well as the law by the court alone.

There are only two questions for answer in the case: (1) Was the plaintiff taxable for the year 1917 under section 209 of the Revenue Act of 1917 or under section 201 (Comp. St. §§ 6336⅜j, 6336⅜b)? and (2) Was the plaintiff in the years 1918, 1919, 1920, and 1921 taxable as a personal service corporation?

The plaintiff was a corporation during all the years in question, with a capital stock of $75,000, styled during 1917 and 1918 as Alexander, Goodwin & Garrett. Such corporation was the result of the consolidation of the business previously conducted by Alexander & Goodwin and the business previously conducted by Henry B. Garrett. The good will of Alexander & Goodwin was valued at $63,000 and that of Henry B. Garrett at $12,000. Garrett bought from Alexander & Goodwin sufficient stock to make the holdings of the three equal. No payment of money or property was made to the corporation for the issuance of its stock other than the said good wills. Upon the death of Goodwin in 1919, his stock holdings were acquired by Alexander and Garrett and the corporate name was changed to Alexander & Garrett. During all the years under consideration, the stockholders devoted their entire time exclusively to the operation of its business, and, according to the uncontradicted testimony of the stockholders, more than 90 per cent. of the earnings of the corporation were directly attributable to the work of such stockholders. The business of the corporation was soliciting and writing fire insurance, renting real estate as agent of its owners, selling real estate, negotiating loans between borrowers and lenders, and a small amount of such work as inspection. The employees of the corporation, other than the stockholders, were a

treasurer, bookkeeper, clerk, a man in charge of repairs and rentals, a man in charge of fire insurance, looking after the details of the office, an appraiser of real estate, and three stenographers.

At the beginning of 1917 the corporation had a surplus of $4,185.26, of which $1,027.-24 was invested in furniture and fixtures and $400 in automobiles, leaving a net amount otherwise available of $2,758.02. The following statement shows the earnings, dividends, and remaining surplus for each of the years in question:

| | | |
|---|---:|---:|
| January 1, 1917 | | $ 4,185.26 |
| Earnings for 1917 | | 7,247.57 |
| December 31, 1917 | | $11,432.83 |
| Dividends paid out | | 7,500.00 |
| Surplus | | $ 3,932.83 |
| Earnings 1918 | $9,262.38 | |
| Less profit and loss account | 28.36 | |
| | $9,234.02 | 9,234.02 |
| December 31, 1918 | | $13,166.85 |
| Dividends paid out | | 7,500.00 |
| Surplus | | $ 5,666.85 |
| Earnings 1919 | | 15,863.74 |
| December 31, 1919 | | $21,530.59 |
| Dividends paid out | | 15,000.00 |
| Surplus | | $ 6,530.59 |
| Earnings 1920 | | 15,264.55 |
| December 31, 1920 | | $21,795.14 |
| Dividends paid out | | 15,000.00 |
| Surplus | | $ 6,795.14 |
| Earnings 1921 | | 2,977.01 |
| Surplus | | $ 9,772.15 |

The gross earnings during the several years were: 1917, $43,059.21; 1918, $48,-155.03; 1919, $65,032.99; 1920, $87,641.50; 1921, $63,308.98.

The earnings on commissions on insurance and rents ranged from fifty-two and a fraction to sixty-seven and a fraction per cent. of the gross earnings per annum. In addition to such commissions it also received commissions on negotiating loans, on the sale of real estate, inspection fees, interest, and discount and miscellaneous earnings. Just what constituted the sources of the miscellaneous earnings is not made apparent. Miscellaneous earnings for the years in question were: 1917, $1,020.71; 1918, $1,283.46; 1919, $746.87; 1920, $1,224.50; 1921, $5,-225.79.

At all times there were substantial sums of money held by the corporation representing rents collected and not remitted to owners. Settlement with insurance companies was required to be made within 60 or 90 days, and insurance premiums paid were on hand until the necessary date for remission to the companies. From time to time, especially in December of each year, advances were made to customers for the payment of taxes and for other purposes. Money for this purpose was mostly supplied by that collected and not remitted as stated above. At times it was necessary to borrow from the bank. During all of the period substantial sums were advanced to the stockholders, and each year such advances to the stockholders were very largely in excess of the surplus for each year, except for the year 1921, when the advances to the stockholders aggregated $11,896.73 and the surplus was $9,772.15. On the books there is included in bills payable an item of $14,000, which, as explained, was not technically properly there, as it represented a loan of money belonging to Mrs. Annie G. Taylor; the title being taken in the name of the corporation for convenience, she being absent from the country. Disregarding this item, the amounts owing each year by the stockholders for advances were in excess of bills payable, except for the year 1921. The excess in 1921 of bills payable over the amounts owing by stockholders is explained by the purchase of stocks in other corporations in that year. In 1919 a stable was bought in Augusta which netted from its rental about $500 per annum. In 1920 the corporation leased an office building in Athens, known as the Holman building, which resulted in a substantial loss. A large part of the earnings were distributed to the stockholders each year by the declaration of dividends as shown above.

[1] 1. Section 209 of the Revenue Tax Act of 1917 defines the corporation to be taxed thereunder thus:

"* * * In the case of a trade or business having no invested capital or not more than a nominal capital." Act approved Oct. 3, 1917, 40 Stats. 306; Comp. Stat. § 6336⅘j.

The sole question therefore is, Did this corporation have any "invested capital" or "more than a nominal capital"?

The act of 1917 carries, in section 207 (Comp. St. § 6336⅞h), the definition of "invested capital." Manifestly under such definition there was no "invested capital" unless the surplus be such capital. Gus. Sun Booking Exchange Co. v. Deane (D. C.) 10 F.(2d) 378; Empire Fuel Co. v. Hays (D. C.) 295 F. 704; Cartier v. Doyle (C. C. A.) 277 F. 150.

Not only must such surplus be capital, but, in order to bring a corporation under this section 209, such capital must "be used or employed in the business." Porter v. Lederer (D. C.) 267 F. 739. How can such surplus "be used or employed in the business" when it was in the possession of the individual stockholders or invested in stock of other corporations?

Even if the surplus were capital and were "used or employed in the business," would it be more than a "nominal capital"?

The facts are that about half of such surplus was invested in furniture and fixtures and automobiles; that during the year 1917 the earnings were $7,247.57 and the dividends were $7,500, reducing the surplus to $3,932.-83; that during this year the advances to the stockholders were $38,110, and that the gross earnings for the year were $43,059.21. It is difficult for me to appreciate how there can be any serious urge that under these facts this surplus was employed as capital in the business or was more than a nominal capital.

This corporation was entitled to be classified under section 209 for the year 1917.

[2] 2. Was the plaintiff in the years 1918, 1919, 1920, and 1921 taxable as a "personal service corporation"?

The definition of a personal service corporation is found in section 200 of the Revenue Act of 1918, approved February 24, 1919 (Comp. St. § 6336⅛a), which definition was continued in force through 1919, 1920, and 1921, and is as follows:

"The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor."

There can be no question from the proven facts in this case that the first element of this definition is fully proven to exist.

Is the capital employed "a material income-producing factor"?

The only capital employed in the business, if any, was the surplus. It is not affirmatively shown what, if any, interest was paid by the stockholders on advances made. Whether or not interest was paid seems rather immaterial in the determination of this question, inasmuch as it would be practically payment of interest by the stockholders to themselves. During the entire time a sum in excess of the surplus was in the hands of the stockholders either as advances or loans.

Thus held by the individual stockholders deprives such surplus of being "a material income-producing factor." There is nothing to indicate that the business could not have been or would not have been conducted with the same magnitude and profit if each year the entire surplus had been wiped out by the declaration of sufficient dividends, or if such surplus had been invested in stocks and bonds. The surplus, measured by the other contributing elements of the business and by its magnitude, is to my mind clearly not "a material income-producing factor." Authority for this conclusion is found in the case of George B. Ricaby Co. v. Nauts (D. C.) 19 F. (2d) 271.

In the case of Hubbard-Ragsdale Co. v. Dean (D. C.) 15 F.(2d) 410, it was determined that the business there under consideration was "essentially mercantile or commercial." It was also determined that capital was necessarily required and was used in the business, and was therefore a "material income-producing factor." By implication at least such opinion holds that in the case at bar the corporation should be taxed as one of "personal service," where it is stated:

" * * * Where the intrinsic nature of the business is the rendition of a 'service' to another, as in the case of real estate brokers, lawyers, doctors, or even artisans, who need not supply materials, the use of capital is merely incidental. The individual thus sells only experience, knowledge, or skill, intangible in its nature and existing independent of capital, either in the sense of money or other tangible property."

"Nominal capital," under the act of 1917 (Comp. St. § 6336⅛a et seq.) and capital, being a "material income-producing factor" under the subsequent acts through 1921, are of substantially the same import.

The following cases, while dealing with the Revenue Act of 1917, in substance, therefore, deal with the principles here discussed: Railroad Stevedoring Corp. v. Bowers (D. C.) 7 F.(2d) 781; Park Amusement Co. v. McCaughn (D. C.) 14 F.(2d) 553; Gus Sun Booking Exchange v. Deane (D. C.) 10 F. (2d) 378.

In Railroad Stevedoring Corp. v. Bowers, the capital stock of the corporation was only $3,000, and the accumulated surplus had aggregated $37,757.08, but the court said:

"The evidence fails to show that any of this undivided surplus was used in the business. The plaintiff used none of its capital in the performance of the contracts. The appliances used and needed for the performance of the work under the contract with

the railroad company, and the office room, were furnished by the railroad company. The wages paid to its employees were paid out of the money received from the railroad company. It received no interest on the surplus and undivided profits. Mr. James, who was the practical owner of the corporation, used the money in the business of his other corporations, without paying to the plaintiff any other compensation, either interest or otherwise, for its use. The $3,000 paid-up capital was in fact only a nominal capital, and likely was drawn on for some small incidental expenses which would naturally arise in the conduct of any business."

Alexander & Garrett should have been taxed as a "personal service corporation" for the years 1918, 1919, 1920, and 1921.

Let a judgment be rendered for the full amounts sued for under each count.