## DE LASKI & THROPP CIRCULAR WOVEN TIRE CO. v. IREDELL, Internal Revenue Collector.

(District Court, D. New Jersey.   November 9, 1920.)

**1. Statutes ☞219—Treasury rulings that word was omitted by oversight cannot change statute.**

In construing a revenue statute, the fact that rulings by the Treasury Department indicate that a word was omitted from the statute by oversight is immaterial, since treasury rulings cannot modify or add to the clearly expressed language of Congress.

**2. Internal revenue ☞7—Corporation licensing use of patents has only "nominal capital," term "capital" not embracing patent rights.**

Within Revenue Act Oct. 3, 1917, §§ 201, 209 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 6336⅜b, 6336⅜j), "capital," which is defined as wealth employed in or available for production, including whatever is intended to furnish shelter, tools, and materials and maintenance for the laborers during production, does not include patent rights, so that a corporation which had an authorized capital only sufficient to maintain its organization between the royalty payments, and derived its income, which largely exceeded its total capital, from royalties on its patents, had only nominal capital, under section 209.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital.]

**3. Internal revenue ☞7—Corporation licensing use of patents is in a sense furnishing skill and service.**

A corporation, which merely licenses others to use patents owned by it, is in a sense furnishing skill and service represented by the patents to others, so as to come within the spirit of Internal Revenue Act Oct. 3, 1917, § 209 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6336⅜j), imposing a smaller excess profits tax on trades or businesses having only a nominal capital, which was intended for the protection of those whose income arose chiefly from personal services.

In Equity.   Suit by the De Laski & Thropp Circular Woven Tire Company against Samuel Iredell, Collector of Internal Revenue of the First District of New Jersey.   On motion by defendant to strike out the complaint.   Motion dismissed.

E. Clarkson Seward, of New York City, Hutchinson & Hutchinson, of Trenton, N. J., and Roberts, Montgomery & McKeehan, of Philadelphia, Pa., for plaintiff.

Elmer H. Geran, U. S. Atty., of Trenton, N. J., for defendant.

BODINE, District Judge.   The plaintiff, a New Jersey corporation, has brought suit against the collector of internal revenue for the First district of New Jersey to recover an excess profits tax for the year 1917, alleged to have been improperly levied, assessed, and collected, and the defendant has moved to strike out the complaint, for the reason that—

"A corporation whose sole income is received from licensed patents is a corporation having more than a nominal capital, within the meaning of sec-

tion 209 of the Revenue Act of October 3, 1917" (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6336⅜j).

The complaint discloses that the plaintiff was incorporated in 1903, with an authorized capital stock of $100,000. At the time of its incorporation its officers contemplated engaging in the business of manufacturing pneumatic vehicle tires of a peculiar and unusual construction. The Company experimented at great expense over a period of years, until it was determined that the manufacture of its tires was not commercially possible. One of the officers of the company during the period of experimentation developed a new form of mold for vulcanizing pneumatic tires, which mold was of general utility, and a patent was secured, which was assigned to the company for $1, together with other patents relating to tire-manufacturing apparatus.

In 1911 the Company ceased conducting any other business than that of granting licenses under its patents. Its capital was reduced to $10,000. During the year 1917 the capital and surplus were $10,000 and $2,000, respectively, or a total invested capital of $12,000, which capital was used as a fund from which to advance salaries, wages, etc., and to provide office furniture, accommodations, and equipment. The company was in much the same position as an individual who, having invented a machine desired by others, received royalties for the use of his invention and kept sufficient money on hand to provide for his needs during periods when royalties would not be received. The company's net income during the year 1917 was $105,650.29. It is clear, therefore, that the patents had real value.

The plaintiff concluded that it was entitled to be assessed under section 209 of the Revenue Act of 1917, on the theory that it was a corporation "having no invested capital or not more than a nominal capital." The Treasury Department, however, acting under section 210 of the act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6336⅜k), on the theory that it was unable to satisfactorily determine the invested capital of the plaintiff, assessed an additional tax, which was paid by the plaintiff under protest, and for the recovery of which this action is brought.

Section 201 of the Revenue Act of 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6336⅜b) provides that, in addition to an income tax, every corporation, except those specifically exempted, of which the plaintiff is not one, shall pay the additional tax upon its net income. The tax was graduated, and was a certain percentage of the net income, not in excess of certain fixed percentages of the invested capital. Under section 207 of the act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6336⅜h) the term "invested capital" is defined. It appears from this section that the plaintiff's patents would not be included in the term "invested capital," for the reason that no stock of the plaintiff company was issued therefor, nor were these patents specifically paid for in cash or tangible property. The only invested capital of the plaintiff was the $12,000 of capital and surplus, which was not used in the production of the net income of the plaintiff, but

merely for the purpose of advancing salaries, wages, and providing office accommodations and equipment, and which in itself, under treasury ruling, would not bring the company under section 201 of the act.

In determining the question whether such a corporation, deriving its income solely from royalties or licenses from patents, can be said to be a corporation "having no invested capital or not more than a nominal capital," within the meaning of section 209, reference is made in behalf of the collector to the Congressional Record of October 6, 1917, containing a statement by Hon. Claude Kitchin, who was at that time chairman of the Ways and Means Committee. It appears from this statement that the Excess Profits Tax Law, as contained in the House Bill, applied only to corporations and partnerships, and not to individuals. The Senate brought within the scope of the law individuals in trade or business, but excluded lawyers, doctors, professional men, and officers of corporations, as well as governmental officers. The House conferees, it would seem from Mr. Kitchin's statement, opposed the inclusion of individuals, unless they were all brought in. The Senate insisted upon the exemptions, and section 209 of the act resulted, which, it is the claim of the collector, was intended to apply to a definite class of persons; i. e., lawyers, doctors, professional men, and high-salaried officers of corporations and the government.

If this idea of providing especially for those rendering a personal service was all that was in the minds of the conferees, there seems to be no reason why they should not have used more exact language to convey their meaning, and further there is no reason at all why Congress should have specifically provided that, in a case of a trade or business "having no invested capital or not more than a nominal capital," there should be assessed a tax other than the tax to which such trade or business would otherwise be liable under section 201, unless there was to be a distinction between those employing "invested capital" and these employing "nominal capital." These terms admit of exact definitions.

[1, 2] The determination of this case must, as already indicated, depend upon the meaning of the words "not more than a nominal capital." It is clear from section 207 that the patents from which the plaintiff derived its revenue cannot be regarded as "invested capital." Counsel for the plaintiff, in a most exhaustive and painstaking brief, has shown that the treasury rulings indicate that the word "invested" was omitted in the act by oversight in the phrase "not more than a nominal (invested) capital." This suggestion, however, is not well taken, for the reason that, whatever the treasury rulings may have been, they can be given no force to modify or add to the clearly expressed language of Congress. It does not follow, however, that the word "capital" embraces patents. The following definitions of "capital" are in point:

"Wealth employed in or available for production." Funk & Wagnalls New Standard Dictionary.

"That part of the production of industry which, in the form either of national or of individual wealth, is available for further production." The Century Dictionary and Cyclopedia.

The late J. S. Mill, the eminent economist, defines "capital" as follows:

"What capital does for production is to afford shelter, protection, tools, and materials which the work requires, and to feed and otherwise maintain the laborers during the process. *Whatever things are destined for this use*, destined to supply productive labor with these various prerequisites, are capital." Political Economy, i, iv, § I. (The italics are mine.)

Taking this last definition, which embodies the thought of all the others, it seems clear that patents do not fall within the term "capital"; and it also seems to be clear that this is what was in mind when Congress made the distinction between "invested capital," which is defined under section 207 to include the actual cash value of patents paid for in stock or shares, and also such other intangible property, which had been paid for in money or stock, and also what was in mind when the word "capital" is used alone in section 209, preceded by the word "nominal"; that is, in the sense of something in name only employed in or available for production. The distinction is between those employing those stored-up concrete things, essential to productive labor, and those employing these things existing in name only. Patents were never capital in an economic sense. Congress included them within the term "invested capital" to the extent only of the investment in them; if no investment in them, then they remain in the same class as that intangible something which makes for the wealth of the professional man, the broker, or others engaged in a personal service, which could never be "capital," except in name only.

[3] The decision of this case, however, need not depend solely upon the meaning of the word "capital," to be found in the distinction between "invested capital" and "nominal capital," as used in the act. The patents which the plaintiff owned were the concrete embodiment of the skill which the plaintiff possessed in its field of activity. This skill or service it bartered for a consideration. Such skill or service is like the service a lawyer in large practice renders for an annual retainer, and is very nearly akin to the service which a commission house renders to those who buy and sell through it, or the service of a concern engaged in selling or leasing real estate, and in writing insurance. The plaintiff's source of income was that which certain persons were willing to pay it for the use of its skill and knowledge. It is true that skill and knowledge had been reduced to concrete form; but the payment was for the use of the skill and knowledge, and not for any part or parcel of the form to which the skill and knowledge had been reduced. Hence it would seem that in a very real sense the plaintiff was engaged in rendering a personal service, and was not employing "capital," and certainly no more than a "nominal capital."

The motion to strike is dismissed.