HUBBARD–RAGSDALE CO. v. DEAN, Internal Revenue Collector.

(District Court, S. D., Ohio, W. D. May 22, 1926.)

No. 3502.

1. Internal revenue ⊕➾7(28)—Corporation dealing in live stock on commission, using capital, held not personal service corporation, under Internal Revenue Act, § 200 (Comp. St. § 6336⅛a).

The business of a live stock broker is essentially mercantile, and the use of capital is an indispensable element in the conduct of such business. As to a corporation carrying on such business, *held*, capital is a "material income-producing factor," and such corporation cannot therefore be classified as a personal service corporation, under Internal Revenue Act 1918, § 200 (Comp. St. § 6336⅛a), though all stockholders actively participated in business and only profits were "commissions."

2. Statutes ⊕➾245.

In case of ambiguity, taxing laws must be construed most strongly in favor of taxpayer.

3. Internal revenue ⊕➾38(12).

Corporation, claiming benefit of exception to general method and extent of taxation, has burden of showing that it clearly comes within terms of such exception.

At Law. Action by the Hubbard-Ragsdale Company, against Charles M. Dean, Collector of Internal Revenue for the First District of Ohio. On final submission. Petition dismissed.

Hunt, Bennett & Utter, of Cincinnati, Ohio, for plaintiff.

Haveth E. Mau, U. S. Atty., and Simon Ross, Asst. U. S. Atty., both of Cincinnati, Ohio, and T. H. Lewis, Jr., Sp. Atty. Bureau of Internal Revenue, of Washington, D. C., for defendant.

HICKENLOOPER, District Judge. The only question raised in this action is whether the plaintiff corporation is entitled to classification as a personal service corporation under the Internal Revenue Act of 1918 (40

Stat. 1057). Section 200 of this act (Comp. St. § 6336⅛a) provides:

"The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include * * * any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits or income derived from trading as a principal. * * *"

The plaintiff corporation was engaged in buying and selling live stock upon commission. It engaged in no trading upon its own account, and all of its stockholders, with one partial exception, devoted their entire time to the business as salaried officers or employés.

The corporation enjoyed an extensive and valuable good will, which was originally created because of the long experience of its officers in this business. Sales of live stock for consignors were made only through other dealers, and immediately upon the making of such sales the plaintiff's check was given to the consignor for the amount of the sale price, less commissions. In making purchases for customers, the plaintiff bought only through other dealers, and, upon such purchases being made, gave their check for the purchase price. In the case of sales, the bank account of the plaintiff, upon which its check had been drawn, was reimbursed almost immediately with the check of the dealer representing the purchaser. In the case of purchases through the plaintiff, if for an outside market, the stock was shipped and a draft drawn upon the purchaser with bill of lading attached. Having paid for the stock so purchased from its own bank account, it was likewise then and there necessary to reimburse such bank account through discount of the drafts so drawn. To cover these transactions of continuous draft upon and reimbursement of its bank account, it was expedient, if not absolutely necessary, that a liquid balance of approximately $25,000 be kept on deposit, and this was in fact the average deposit balance kept by plaintiff for the transaction of its business.

The first element of the definition of a personal service corporation is directed toward the elimination of inequality of taxation of partnerships, on the one hand, and corporations in which the income is due primarily to the personal activities of the principal stockholders (whether professional, clerical, execu-

tive, or manual), on the other hand. In the latter class of corporations the situation of the stockholder is closely analogous to that of an active partner in an unincorporated business. This analogy is further emphasized by the fact that under section 218(e) of the act (Comp. St. § 6336⅛i) personal service corporations are exempted from taxation as such, but the individual stockholders are taxed "in the same manner as the members of partnerships."

In a corporation such as is the plaintiff in this case, where all or substantially all of the officers and employés are stockholders, and where practically all stockholders devote their entire time to the business, this first element would seem to be fully met. This is, in fact, virtually conceded by the government.

We come then to the second element of the definition; that is, whether capital (invested or borrowed) is a material income producing factor. Here the test is not exclusively whether the corporation bought and sold on its own account, or did a strictly commission business; it is whether it necessarily requires capital for, and in fact uses it in, the conduct of the business. If the nature of the business is such that it cannot be carried on at all without the constant use of capital, and such use of capital plays a vital part in the successful conduct of the business, it cannot be said that its use in the business is merely incidental.

Under section 209 of the Revenue Act of 1917 (Comp. St. § 6336⅜j), a different, though somewhat analogous, question was repeatedly presented in determining whether a trade or business had "more than a nominal capital." Under that law the invested capital was considered as merely nominal, if it was used solely as a fund from which to advance salaries, wages, etc., and to provide office furniture, accommodations, and equipment. Under such circumstances it played no integral part in the actual production of income. It was incidental to the earning power of the corporation, which functioned independently of it. De Laski, etc., Co. v. Iredell, Collector (D. C.) 268 F. 377, affirmed 290 F. 955 (C. C. A. 3). But where the use of capital served a direct and necessary function in carrying on the business as it was in fact carried on, it was not to be classified as merely nominal. R. H. Martin, Inc., v. Edwards, 293 F. 258 (Dist. Court, S. D. N. Y.).

So, also, under the Revenue Act of 1918, it is necessary to consider the kind of service rendered by the corporation, as assisting in the determination of whether the use of capital ordinarily plays an important part in rendering such service, and then to consider whether, in the particular case under consideration, the use of capital was necessary, and whether it was in fact used. Holmes, Federal Taxes (6th Ed.) p. 191. If capital was not in fact used, it is manifest that it was not necessary, but only incidental. If capital was used, the inquiry is whether such use was vital and necessary to the conduct of the business, or merely an incidental convenience for more orderly fiscal operation.

Otherwise expressed, where the intrinsic nature of the business is the rendition of a "service" to another, as in the case of real estate brokers, lawyers, doctors, or even artisans, who need not supply materials, the use of capital is merely incidental. The individual thus sells only experience, knowledge, or skill, intangible in its nature and existing independent of capital, either in the sense of money or other tangible property. But where the business is manufacturing or mercantile in its nature, and the individuals conducting it must of necessity procure and use, and do so procure and use for its conduct, either funds or merchandise, such capital becomes a material income-producing factor, and the source from which it is procured is immaterial under the act of 1918. The distinction between capital "invested in a business" by the stockholders, and capital "actually used" in such business, must not be lost sight of.

[1] Here the nature of the business was essentially mercantile or commercial. It is true that all the live stock sold was on consignment to the local stockyards, and that all stock purchased was on prior orders and shipped upon sight draft with bill of lading attached; but these purchases and sales necessarily involved the use of capital. It was impossible to carry them on, except by the use of capital, either that invested in the business by the plaintiff's stockholders, or that procured through normal banking credit, or that intrusted to the plaintiff as a bailee. During the three years in question an average of $6,500,000 annually passed through the plaintiff's hands. Vendors were paid by the plaintiff's checks; vendees were extended credit, secured by the bills of lading, until drafts could be collected; and it must be assumed that payment of vendors immediately and the extension of credit to vendees, rather than requiring a cash advance before the purchase, were necessitated by the nature of the business and existing competition, and for the purpose of holding trade. Credit was

also secured from the banks in the discount of drafts.

Nor did the plaintiff render a "service" to the customer, in the sense of hunting up a purchaser, as in the case of the usual real estate broker, or in the sense of exercising special qualifications of skill or learning, as in the case of lawyers or doctors. Facilities were afforded the customers through the plaintiff of buying or selling live stock, but in this specific case such facilities find their origin, not in the service of the plaintiff alone, but rather in the association of the various live stock dealers upon the local stockyards, as upon an exchange. No inherent difference exists between a sale at one's own storeroom and a sale at a jointly enjoyed, common market place. The business is none the less purely mercantile, because the merchandise is shipped to plaintiff on consignment·and sold on terms of sight draft at the original consignor's risk. The fact that the plaintiff's profits are called commissions, and constitute a fixed percentage of the sale price, rather than being the difference between purchase and sale prices, makes no material difference in the true trading nature of the business.

We therefore have here a case where the nature of the business of plaintiff is not the rendition of a personal service, but is essentially mercantile; where the profits of plaintiff are derived from making sales and purchases, from dealing with, if not in, merchandise; where the use of capital, in the sense of material wealth, is a necessary element in the conduct of the business; where credit is given to and extended by the plaintiff; and where practically all the investment of the stockholders of the corporation, in excess of good will, is in fact kept as liquid working capital and used, and required to be used, for the normal conduct of the business. Under such circumstances it cannot be said that capital is not a "material income-producing factor." That which is an indispensable factor must be considered as a material one.

[2, 3] We are not unmindful of the doctrine that, in case of ambiguity, taxing laws must be construed most strongly in favor of the taxpayer. U. S. v. Coulby, 258 F. 27, 169 C. C. A. 165 (C. C. A. 6); Gould v. Gould, 245 U. S. 151, 153, 38 S. Ct. 53, 62 L. Ed. 211. But there is no claim here of ambiguity. The plaintiff claims the benefit of an exception to the general method and extent of taxing corporations. The burden is upon the plaintiff to show that it clearly comes within the terms of such exception.

"In such cases, a reasonable doubt is fatal to the claim. Prima facie every presumption is against it. It is only when the terms of the concession are too explicit to admit fairly of any other construction that the proposition can be supported." West Wisconsin R. R. Co. v. Supervisors, 93 U. S. 595, 598 (23 L. Ed. 814). See, also, Lee v. Sturges, 46 Ohio St. 153, 159, 19 N. E. 560, 2 L. R. A. 556.

Here the plaintiff has failed to show that it comes within the clear and unambiguous definition of a personal service corporation, as respects the second element of such definition, and judgment must be entered for the defendant, notwithstanding the fact that the first element of section 200 is fully met.

The plaintiff's petition will be dismissed, at its costs.