### DREYER COMMISSION CO. v. HELLMICH, Collector of Internal Revenue.

Circuit Court of Appeals, Eighth Circuit. March 30, 1928.

No. 7816.

1. **Appeal and error** ⟨⟩750(7)—Assignments because court found certain facts and failed to render judgment for plaintiff, and because of certain declarations of law, presented no question, except whether findings supported judgment.

In suit against collector of internal revenue to recover taxes paid under protest, in which parties made written stipulation waiving jury trial, assignments of error because court found certain facts, because of certain declarations of law, and in failing to render judgment for plaintiff, *held* to present no reviewable question, except question whether judgment was supported by findings which were made.

2. **Internal revenue** ⟨⟩38(13)—Findings held to support judgment dismissing action by commission company to recover taxes paid under protest; "nominal capital;" "personal service corporation" (Revenue Act 1917, § 209 [Comp. St. § 6336⅜j]; Revenue Act 1918, §§ 200, 205(a), 231, 304(a), 335(a); Comp. St. §§ 6336⅛a, 6336⅛d(a), 6336⅛o, 6336⅞c (a), 6336⅞₁₆n(a).

Findings that commission company's business was divided into three classes, two of which required use of invested capital, *held* to support judgment dismissing action against collector of internal revenue to recover taxes paid under protest, on ground that company's income was not properly attributable to use of capital, where

findings did not show that any net income was derived from transactions requiring no capital, since company using capital by purchasing commodities for resale is not one having "nominal capital," within Revenue Act 1917, § 209 (Comp. St. § 6336⅜j), and is not "personal service corporation," within Revenue Act 1918, §§ 200, 205 (a), 231, 304(a), 335(a), (Comp. St. §§ 6336⅛a, 6336⅛d(a), 6336⅛o, 6336⅞₆c(a), 6336⅞₆n(a).

3. **Internal revenue ⬤=38(12)—Taxpayer must prove allegation that income is not attributable to use of capital.**

Commission company, suing collector of internal revenue to recover taxes paid under protest, *held* to have burden to prove its allegation that income was not properly attributable to use of capital.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Davis, Judge.

Action by the Dreyer Commission Company against Arnold J. Hellmich, Collector of Internal Revenue. Judgment for defendant, and plaintiff brings error. Affirmed.

Alexander R. Russell, of St. Louis, Mo. (Abram M. Frumberg and A. Sloan Oliver, both of St. Louis, Mo., on the brief), for plaintiff in error.

F. F. Toomey, Sp. Atty. Bureau of Internal Revenue, of Washington, D. C. (Louis H. Breuer, U. S. Atty., of Rolla, Mo., Claude M. Crooks, Asst. U. S. Atty., of St. Louis, Mo., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and John A. McCann, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for defendant in error.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. The question presented in this case is whether the plaintiff in error is entitled to recover from the defendant collector of internal revenue an amount paid by the plaintiff in error under protest under the Revenue Acts of 1917 (40 Stat. 300) and 1918 (40 Stat. 1057). The plaintiff was a corporation engaged in business at St. Louis, Mo., and made a return for its fiscal year beginning March 1, 1917, and ending February 28, 1918. The amount of the taxes assessable for the 10 months of 1917 depends on the proper construction of section 209 of the act of 1917 (Comp. St. § 6336⅜j), which reads as follows:

"Sec. 209. That in the case of a trade or business having no invested capital or not more than a nominal capital there shall be levied, assessed, collected and paid, in addition to the taxes under existing law and

under this act, in lieu of the tax imposed by section two hundred and one, a tax equivalent to eight per centum of the net income of such trade or business in excess of the following deductions: In the case of a domestic corporation $3,000, and in the case of a domestic partnership or a citizen or resident of the United States $6,000; in the case of all other trades or business, no deduction."

The amount of the taxes assessable for the two months of 1918 depends on the proper construction of portions of the Revenue Act of 1918 as follows:

"Sec. 200. That when used in this title * * * The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor." Comp. St. § 6336⅛a.

"Sec. 205. (a) That if a taxpayer makes return for a fiscal year beginning in 1917 and ending in 1918, his tax under this title for the first taxable year shall be the sum of: (1) The same proportion of a tax for the entire period computed under title 1 of the Revenue Act of 1916 as amended by the Revenue Act of 1917 and under title 1 of the Revenue Act of 1917, which the portion of such period falling within the calendar year 1917 is of the entire period; and (2) the same proportion of a tax for the entire period computed under this title at the rates for the calendar year 1918 which the portion of such period falling within the calendar year 1918 is of the entire period: Provided, that in the case of a personal service corporation the amount to be paid shall be only that specified in clause (1)." Comp. St. § 6336⅛d(a).

"Sec. 231. That the following organizations shall be exempt from taxation under this title—

* * * * * * * *

"(14) Personal service corporations." Comp. St. § 6336⅛o.

"Sec. 304. (a) That the corporations enumerated in section 231 shall, to the extent that they are exempt from income tax under title 11, be exempt from taxation under this title." Comp. St. § 6336⅞₆c(a).

"Sec. 335. (a) That if a corporation (other than a personal service corporation) makes return for a fiscal year beginning in 1917 and ending in 1918, the tax for the first taxable year under this title shall be the

sum of: (1) The same proportion of a tax for the entire period computed under title 11 of the Revenue Act of 1917 which the portion of such period falling within the calendar year 1917 is of the entire period; and (2) the same proportion of a tax for the entire period computed under this title at the rates specified in subdivision (a) of section 301 which the portion of such period falling within the calendar year 1918 is of the entire period." Comp. St. § 6336⅞₆ₙ(a).

[1] The parties made a written stipulation waiving a jury trial. The court made findings and thereupon entered judgment dismissing the action. The assignment of errors alleges error because the court found certain facts, because of certain declarations of law, and in failing to render a judgment for the plaintiff. These assignments present no reviewable question, except the question whether the judgment is supported by the findings which were made. Tatum v. Davis, (C. C. A.) 283 F. 948, 949; Allen v. Cartan & Jeffrey Co. (C. C. A.) 7 F.(2d) 21, 22; Denver Live Stock Commission Co. v. Lee (C. C. A.) 18 F.(2d) 11, 14.

[2] From these findings it appears that the plaintiff corporation was engaged in business at St. Louis, Mo., during the period in question, dealing in grains, flour, bran and related commodities. Its stockholders were regularly engaged in the active conduct of its affairs. It had a paid-in invested capital on March 1, 1917, of $35,607.69. This capital was increased in October, 1917, to $50,000, and at the end of the fiscal year it was $66,-784.33. Some of this capital was invested in securities but the remainder consisted of cash on deposit in the bank, and the bank balances varied during the year from $10,000 to $30,-000. The corporation's gross income for the year was a little over $83,000 and its expenses somewhat exceeded $46,000. The findings show the nature of the plaintiff's business, and divide it into three classes as follows:

"Class A Brokerage. This class embraced those transactions where the plaintiff disclosed the names of the buyer and seller. It arranged sales by bringing the buyer and seller together. The seller, upon shipment of the commodity, would draw a draft on the buyer and when the same was paid, or at the end of the month, the seller would pay the plaintiff its commission. The capital employed in this class of business was merely incidental.

"Class B Brokerage. This class embraced those transactions where the plaintiff did not disclose the names of the buyer and seller. It would locate a buyer and then a seller, or vice versa. The company would then order the shipment in its name from the seller. The seller would draw a draft on the plaintiff. When that draft reached the plaintiff's bank a messenger would deliver same to plaintiff's office. Before the close of banking hours plaintiff would give the bank its check in payment of the seller's draft. Plaintiff would then draw a draft on the buyer, attaching bill of lading thereto. This draft on the buyer included plaintiff's profit and when paid by the buyer this profit was automatically reflected to plaintiff's credit at its bank. This class of business required the use of plaintiff's invested capital and substantial capital was in fact so used."

Class C. (1) Consignment and (2) Jobbing.

"(1) Consignment. This represented those transactions where a shipper would consign commodities to the plaintiff and draw a draft on it for 80 per cent. or 90 per cent. of the value of the consignment. The plaintiff would pay the draft. It then disposed of the commodity to the best advantage, collected from the buyer, and remitted the balance of the value of the consignment, if any, to the shipper, less a fixed commission.

"(2) Jobbing. This represented transactions where the plaintiff purchased the commodities outright and then sold and distributed the same to local buyers in St. Louis. The difference between the purchase price to the plaintiff and the selling price to local buyers was profit to the plaintiff. All of the local St. Louis business was done on a jobbing basis. Some jobbing business was done with outside dealers due to the regulations of the Food Administration after October, 1917. The local demand for the commodities handled by the plaintiff was so great that it merely tried to effect equal distribution of its supply.

"This class of business required the use of plaintiff's capital and substantial capital was in fact so used."

The court found that the gross sales under class A amounted to $3,950,387.28, under class B to $702,911.50, and under class C to $358,213.79. The findings do not show the amount of profits or income from any of these three classes, but show that the commission or brokerage received by plaintiff from a class B transaction was approximately double that received from a class A transaction, and that a jobbing transaction, class C (2), yielded greater profits than any other transaction. A finding is made that after October, 1917, when regulations of the Food

Administration Department became effective, the plaintiff's brokerage on feed stuffs was restricted to 25 cents a ton, whereas a profit of $1.25 per ton was made on the same class of commodities handled on a jobbing basis.

After making these findings the court made specific findings as follows:

"(13) That plaintiff's invested capital played a direct and necessary function in carrying on its business, as it was in fact carried on during said fiscal year, and was more than nominal.

"(14) That plaintiff's capital was a material income-producing factor during said fiscal year."

These specific findings obviously exclude the plaintiff from the exempted class described in section 209 of the Revenue Act of 1917, as "the class of a trade or business having no invested capital, or not more than a nominal capital," and also exclude the plaintiff from the exempted class of personal service corporations under the Revenue Act of 1918, because by section 200 of that act the term "personal service corporation" means a corporation "in which capital (whether invested or borrowed) is not a material income producing factor." These findings are not only not inconsistent with the judgment, but made it necessary.

These specific findings are not inconsistent with the findings which have been stated, showing the methods of transacting business and the amount of the transactions and of the profits derived from the business. The defendant in error concedes that if substantially all of the income had arisen from the brokerage transactions described in the findings as "Class A Brokerage," no tax could lawfully have been levied, because the use of invested capital in such transactions was negligible.

The nature of the business as conducted by the plaintiff, apart from the transactions in class A, required and used capital as a necessary part of its business. The plan of business as to class B and class C (2) transactions was for the plaintiff in error to become the owner by the use of its capital of the commodities, to acquire the legal title, so that it might fix the sale prices to yield such profits as it could get.

The plaintiff in error contends that the class B transactions should be regarded as of the same kind as class A, because purchasers were always ready to accept and to pay for the commodities as soon as the plaintiff in error received them. From this fact, it is argued, that the use of capital was temporary and incidental. It is a sufficient answer to this contention to say that the findings do not show that any of the resales were promptly made, as contended by the plaintiff in error.

[3] The plaintiff in error further contends that the capital was nominal in the sense in which the word is used in section 209 of the Revenue Act of 1917, because the total sales made under class A without the use of its capital was almost four times the total sales made by the use of its capital in classes B and C, or a total of sales of $3,950,337.28 as compared to a total of $1,079,125.29. Without considering the effect of this ratio of sales, if the ratio of profits had been the same, the findings do not disclose what, if any, gross or net profits were made from any one of the several classes of the business. The findings do not show what portion of the expenses are attributable to any of the classes of the business. It may be that all of the income of the plaintiff in error was realized from the use of the capital, and that a loss was incurred in the transactions of class A. The burden was upon the plaintiff to prove what it had alleged, that its income was not properly attributable to the use of its capital. Atlanta Casket Co. v. Rose (C. C. A.) 22 F.(2d) 800.

The use of capital may be merely incidental to the conduct of a trade or business, as where it is used merely as a fund out of which to advance salaries, rent and other expenses of operation (De Laski & Thropp Circular Woven Tire Co. v. Iredell [D. C.] 268 F. 377, 378; F. Wallis Armstrong Co. v. McCaughn [D. C.] 21 F.[2d] 636, 637); but where an income is earned by a corporation conducting a trade or business, which has a substantial capital, by the use of that capital in purchasing commodities for resale and which are resold, in the customary course of the trade or business, and the use of the capital is a material factor in producing the income, the corporation is not one having merely a nominal capital, as defined in section 209 of the Revenue Act of 1917, nor is it a personal service corporation as defined in section 200 of the Revenue Act of 1918 (Hubbard-Ragsdale Co. v. Dean [D. C.] 15 F.[2d] 410, 411, 412; R. H. Martin, Inc., v. Edwards [D. C.] 293 F. 258, 260; Alworth-Stephens Co. v. Lynch [D. C.] 278 F. 959, 968; Cotton Hotel Co. v. Bass [D. C.] 7 F.[2d] 900, 902; United States v. Pann [D. C.] 23 F.[2d] 714, 715).

In the transactions mentioned as class B and in those of class C (2), the plaintiff in error purchased the commodities by the use of its capital. In class C (1) the plaintiff in error advanced 80 to 90 per cent. of the value of the goods shipped to it by the con-

signors. None of these transactions could have been conducted without the use of large sums of money readily available to the plaintiff in error. The findings do not show that these sums came from borrowed money, or from any other source than capital. The transactions were not isolated nor exceptional, but constituted a large part of the regular business of the plaintiff in error. As the findings do not show that any of the net income was derived from the class A transactions, there is no basis for the claim that the income arose from the personal service of the stockholders in the corporation and without capital as an income-producing factor or for the claim that the trade or business had only a nominal capital.

The judgment will be affirmed.