## DENVER LIVE STOCK COMMISSION CO. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Eighth Circuit. November 24, 1928.

No. 8163.

544

Leslie E. Greene, of Denver, Colo. (Harold W. Perry, of Denver, Colo., and J. S. Boyd, of Chicago, Ill., on the brief), for appellant.

John Vaughan Groner, Sp. Asst. Atty. Gen. (Mabel Walker Willebrandt, Asst. Atty. Gen., and C. M. Charest, General Counsel, Bureau of Internal Revenue, and J. Arthur Adams, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before VAN VALKENBURGH and COTTERAL, Circuit Judges, and REEVES, District Judge.

VAN VALKENBURGH, Circuit Judge. This appeal is brought to review a decision of the United States Board of Tax Appeals which affirmed a ruling of the Commissioner of Internal Revenue determining a deficiency of $7,000.96 in income and excess profit taxes for the fiscal year ending May 31, 1920. Appellant seeks classification as a personal service corporation. The only question involved is whether, under the statutory definition of such corporation, the capital of the company is a material income-producing factor. The Board of Tax Appeals found that it was, and the judgment must be sustained if there is any substantial evidence supporting that finding, for the reason that the grant of exclusive power to the Board finally to determine the facts upon which tax liability is based limits the review on appeal to questions of law. It is conceded that if the capital of the company was a material income-producing factor the law was correctly applied.

Appellant is a Colorado corporation, engaged in the business of buying and selling live stock for others, at Denver, Colo. It appears that in addition to these activities appellant had also been in the loan business. Of this its counsel say in their brief: "Prior to the fiscal year in question, i. e., June 1, 1919, to May 31, 1920, the company engaged in certain loaning activities; but early in January, 1919, the Stockman's Loan Company was organized and a verbal agreement entered into with that company that they would take over loans of Appellant which were not paid and which stood inspection at maturity. The loan company reserved the right to throw out loans that were not acceptable and not up to their standards. The loan company was not to receive any share of Appellant's profits and Appellant was not to receive any of the profits from the loan company. By this arrangement and the liquidation of loans, the loans carried by the Appellant in the taxable year were considerably less than those carried in prior years, the loans carried over being those that were not acceptable to the loan company. Some of the secured and a few of the unsecured loans were rediscounted at the bank during the year."

It conclusively appears from the facts found, and evidence introduced upon which that finding was based, that at the beginning of the taxable year appellant held notes receivable in the amount of $335,596.41, and at the close of the year in the amount of $195,500.47; that during that time it made loans exceeding $167,000; that its income from commissions in its business of buying and selling live stock for others exceeded $84,000, and from other sources, including interest on its loans, more than $22,000—its total gross income being in excess of $106,000. Thus its income from capital sources was approximately one-fifth of its total income. It is true that deductions on account of rediscounts, etc., reduced its net income from capital sources, if applied exclusively to such sources, to a loss; but this does not alter the principle that the capital invested was income producing and formed one factor of its business. In such case, the loss or gain must be computed upon the entire business and not upon any one factor; just as in the familiar case of a railway system with different branches, some of which pay and some of which do not pay, the return upon capital is computed upon the business as a whole and not upon that of any subdivision. In addition to its capital, appellant carried a surplus of more than $100,000 for the protection of its loans and to meet other demands of its business. It had in the past financed its customers and used its capital for that purpose; this, in turn, contributed to the volume of its business and to resulting profits. During the fiscal year involved it was still necessarily engaged in the same activities to an appreciable extent. It may, as stated, have contemplated a withdrawal from the business of financing its customers, and from loan operations generally, and may have made progress in that direction. When it has done

so to a controlling extent, it may then, as conceded by the government, be classified as a public service corporation; but for the year under consideration there is substantial evidence to support the finding of the Commissioner and of the Board that its capital still remained a material income-producing factor; this being so, the finding of the Board of Tax Appeals is conclusive. We cannot indulge the contention of counsel that the term "income," as employed in the statute, is restricted to net income; that whether, in any given year, a corporation is to be classified as a personal service corporation, depends upon whether its capital in that particular year resulted in the production of net income, and that such a corporation may be classified as general in one year and as a personal service corporation in another year, dependent upon the financial result of its operations.

It follows that the judgment of the Board of Tax Appeals should be affirmed, and it is so ordered.