## FEEDERS' SUPPLY CO. v. COMMISSIONER OF INTERNAL REVENUE.*

Circuit Court of Appeals, Eighth Circuit.
February 20, 1929.

No. 8255.

Theodore B. Benson and P. W. Shrader, both of Washington, D. C., for appellant.

A. W. Henderson, Sp. Asst. to Atty. Gen. (Mrs. Mabel Walker Willebrandt, Asst. Atty. Gen., Morton P. Fisher, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and C. Colden Miller, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before KENYON, Circuit Judge, and JOHNSON and McDERMOTT, District Judges.

KENYON, Circuit Judge. This appeal from a decision of the United States Board of Tax Appeals holding against the contention of the taxpayer involves income and profit taxes for the fiscal years ending June

*Certiorari denied 49 S. Ct. 514, 73 L. Ed. ——.

30, 1917, 1918, 1919 and 1920. The Board made findings covering every fact feature of the case, which, stated as briefly as consistent with an understanding of the situation, are as follows:

Appellant, a Missouri corporation, was incorporated June 5, 1913, with an authorized capital of $5,000. It was an evolution from a partnership. Its business was buying and selling stock feed, sales being made either in carload lots, shipped directly from manufacturer to consumer, or less than carload lots, shipped from appellant's warehouse.

In the sales in carload lots, the shipment would be consigned to appellant at customer's railroad station. The manufacturer would draw a sight draft on appellant, to which was attached the bill of lading covering the particular shipment. This sight draft, under an arrangement with the bank, would be presented to appellant and paid by its check on the bank. Appellant would then immediately draw a sight draft on the customer, attach the bill of lading, and deposit same to its credit in the bank. The draft would be collected in the usual course and proceeds remitted to the bank.

Appellant maintained a warehouse at Kansas City, from which it made shipments of less than carload lots to its customers. It also maintained a sale office at Omaha, Neb., and for a time a branch office in Fort Worth, Tex. Appellant, at the time of its formation, received net assets from the partnership in the amount of $7,462.98, which was converted into $5,000 capital stock and $2,462.98 paid-in surplus. The invested capital of appellant for the fiscal year ending June 30, 1917, was $14,252.55, $5,000 of this being capital stock, and $9,252.55 being surplus. During that year the gross sales of the business amounted to $2,089,353.25, of which $278,287.71 was from sales of goods carried in its warehouse, and the rest from goods sold in carload lots on sight drafts. The gross profits were $141,765.41, of which $48,370.24 was from sales of goods shipped from the warehouse, the balance from carload lot shipments. The net income was $88,692.28.

For the fiscal year ending June 30, 1918, appellant had an invested capital, as found by the board, of $44,391.98, which represented $5,000 capital stock, and $39,391.98 surplus. During that fiscal year appellant's gross sales were $2,694,065.79, of which $529,832.88 was from sales of goods shipped from its warehouse and the balance from carload lot shipments. The gross profit for that year was $144,349.66, of which $78,407.-

80 was from sales shipped from the warehouse. Appellant's net income for the fiscal year was $46,502.33. July 1, 1918, appellant had a net worth of $83,709.04, which represented the $5,000 capital stock and $78,709.04 surplus.

In August, 1918, appellant increased its common stock from $5,000 to $125,000, and authorized issuance of preferred stock in the amount of $50,000, only $35,000 of which was actually issued, and this to holders of common stock in payment of amounts owing by appellant to the stockholders. $75,000 of the additional common stock was issued as a stock dividend. The remainder was issued to the stockholders, and notes bearing 6 per cent. interest taken therefor in the sum of $45,000. Only one of them was ever paid in full. Payments on the other notes were made by cash dividends to the extent of $13,686.29. Some payments were made by charges to the personal accounts of the makers. The unpaid balances were canceled by the action of the board of directors of the corporation, and a proportionate amount of stock was canceled. Some interest was paid on the notes. During the fiscal years ending June 30, 1919, and June 30, 1920, interest was paid on borrowed money by the corporation in excess of the interest rate upon these notes.

Two substantial questions are presented upon this appeal:

(a) For the years 1917 and 1918 is appellant entitled to have its profits tax computed under section 209 of the Revenue Act of 1917? The portion of particular importance being as follows: "Sec. 209. That in the case of a trade or business having no invested capital or not more than a nominal capital there shall be levied, assessed, collected and paid, in addition to the taxes under existing law and under this act, in lieu of the tax imposed by section two hundred and one, a tax equivalent to eight per centum of the net income of such trade or business in excess of the following deductions: In the case of a domestic corporation $3,000, and in the case of a domestic partnership or a citizen or resident of the United States $6,000; in the case of all other trades or businesses, no deduction." 40 Stat. 307.

(b) Should there be included in invested capital for the fiscal years 1919 and 1920 the actual cash value of the promissory notes given by its stockholders for shares of stock issued to them?

Was the trade or business of appellant one having "not more than nominal capital"? ▮ Appellant insists it was, and therefore entitled to classification for taxation pur-

poses under section 209, and that surplus should not be considered to defeat such classification. If the surplus was not actually used as a material factor in carrying on the business there would be merit in this contention, but if surplus is left in a business for the purpose of being used in carrying on the business and is used therein as capital is used and is a material factor in the production of income a different situation is presented.

As said in Iowa State Sav. Bank v. City Council of Burlington et al., 98 Iowa, 737, 739, 61 N. W. 851, 852, "The word 'capital,' as applied to the money of a corporation, may refer to the money paid in by the stockholders for the use of the corporation, and commonly known as the capital stock; but, in a wider and more popular sense, it includes all the money and other property of the corporation used in transacting its business. So long as the profits are not withdrawn from the business, they constitute a part of the capital. The distinction between the capital and surplus, so long as both are used in carrying on the business, is theoretical merely, and is largely a matter of bookkeeping." In Bailey, Collector, v. Clark et al., 21 Wall. 284, 287 (22 L. Ed. 651), referring to the term "capital," the Supreme Court said: "And when used with respect to the property of individuals in any particular business, the term has substantially the same import; it then means the property taken from other investments or uses and set apart for and invested in the special business, and in the increase, proceeds or earnings of which property beyond expenditures incurred in its use consist. the profits made in the business." See, also, State ex rel. Citizens' Bank of La. v. Board of Assessors et al., 48 La. Ann. 35, 18 So. 753; Holmes, Federal Taxes (6th Ed.) p. 192.

If the surplus here, used as capital, is a material factor in producing income, it should for the purposes of determining the classification of the taxpayer under section 209 be considered as capital. This proposition is not gainsaid by any of the cases cited by appellant. In fact, in one of the cases cited, Porter et al. v. Lederer (D. C.) 267 F. 739, 741, it is said, referring to surplus: "If left for the purpose of being used as capital, and being so used, such funds are capital." The invested capital then in this matter, including surplus, for the year ending June 30, 1917, was $14,252.55, and for the fiscal year 1918 was $44,391.98, as found by the board. These would seem to be substantial sums. But appellant insists that they are merely nominal, because gross sales of over $2,000,000 were made in each fiscal year under consideration, and that such a small investment could not have been used to any appreciable or substantial extent in bringing about the result.

The amount of business carried on by a corporation is not the test to determine whether capital is nominal or otherwise. We agree with the statement in the opinion of the board, viz.: "The ratio which invested capital bears to gross sales, we do not conceive to be a proper criterion for determining whether such capital is nominal or otherwise."

Nominal capital is that which is capital in name only; that is, not substantial. Black's Law Dictionary defines "nominal" as follows: "Titular; existing in name only; not real or substantial; connected with the transaction or proceeding in name only, not in interest." Webster's New International Dictionary: "Existing in name only; not real or actual; merely named, stated, or given, without reference to actual conditions; often with the implication that the thing named is so small, slight, or the like, in comparison to what might properly be expected, as scarcely to be entitled to the name; as, a nominal difference; a nominal price."

In Hubbard-Ragsdale Co. v. Dean, 15 F. (2d) 410 (District Court case), which was affirmed by the Circuit Court of Appeals of the Sixth Circuit, 15 F.(2d) 1013, the court said: "If the nature of the business is such that it cannot be carried on at all without the constant use of capital, and such use of capital plays a vital part in the successful conduct of the business, it cannot be said that its use in the business is merely incidental. * * * But where the use of capital served a direct and necessary function in carrying on the business as it was in fact carried on, it was not to be classified as merely nominal."

In Dreyer Commission Co. v. Hellmich, Col. Int. Rev., 25 F.(2d) 408, 411, this court has said as follows: "The use of capital may be merely incidental to the conduct of a trade or business, as where it is used merely as a fund out of which to advance salaries, rent and other expenses of operation. De Laski & Thropp Circular Woven Tire Co. v. Iredell (D. C.) 268 F. 377, 378; F. Wallis Armstrong Co. v. McCaughn (D. C.) 21 F. (2d) 636, 637. But where an income is earned by a corporation conducting a trade or business, which has a substantial capital, by the use of that capital in purchasing commodities for resale and which are resold, in

the customary course of the trade or business, and the use of the capital is a material factor in producing the income, the corporation is not one having merely a nominal capital, as defined in section 209 of the Revenue Act of 1917."

In R. H. Martin, Inc. v. Edwards (D. C.) 293 F. 258, where a corporation was acting as selling agent for asbestos mines, receiving commissions, but also bought and sold merchandise on its own account, the proportion of profits from trading on its own account being 23 per cent. in one year and 9⁹⁄₁₀ per cent. in another, and 45 per cent. in another, it was held that for the year ,in which its profits were 45 per cent. it had more than a nominal capital invested, and was not within section 209 of the Revenue Act of 1917.

In Lincoln Chemical Co. v. Edwards (C. C. A.) 289 F. 458, it was held that where a company claimed it was a corporation having only a nominal capital, but had not only a valuable secret process, but a substantial amount of cash which had come to it through its earnings, that such surplus could not be considered as merely nominal. See, on the general subject, Holmes on Federal Taxes (6th Ed.) p. 195.

Appellant refers to a number of cases as sustaining its theory that the capital was merely nominal. For instance, De Laski & Thropp Circular Woven Tire Co. v. Iredell (D. C.) 268 F. 377, affirmed in (C. C. A.) 290 F. 955; Park Amusement Co. v. Mc-Caughn (D. C.) 14 F.(2d) 553; Railroad Stevedoring Corporation v. Bowers (D. C.) 7 F.(2d) 781, and others.

It was shown in De Laski & Thropp, etc., v. Iredell (D. C.) 268 F. 377, that the entire income came from patent licenses which were held by the court not to be included in the term "capital." Therefore it was clear that the corporation had only nominal capital. The invested capital including surplus was $12,000, which was used as a fund from which to advance salaries, etc., and to provide office furniture and equipment incidental to carrying on the business.

In Park Amusement Co. v. McCaughn, supra, there is a discussion of nominal and other capital. Nominal is defined as that which has existence in name only. The court says: "The real criterion is in the fact finding of whether money as an income producer played any real and substantial part in producing the income to be taxed. Each tub must thus stand on its own bottom, and the sole question becomes how the fact stands here." The court held that capital played no substantial part in the production of income.

In Railroad Stevedoring Corporation v. Bowers (D. C.) 7 F.(2d) 781, the court found that neither capital nor surplus was used in the business. The general subject is elucidated somewhat in Holmes on Federal Taxes (6th Ed.) p. 195.

Applying the test therefore laid down by this court in Dreyer Commission Co. v. Hellmich, 25 F.(2d) 408, 411, and by other courts, we cannot escape the conclusion that the capital and surplus used as capital was a substantial factor in producing appellant's income, and was not merely nominal. Appellant admits in its argument that the business in which it was engaged would ordinarily require the use of capital. It states: "The appellant is willing to admit that it used its invested capital, and that, therefore, the capital used and the capital had is one and the same thing." It is apparent that, on account of the arrangement with the bank relative to sight drafts, little, if any, capital was required to handle the carload lot shipments. In handling the sales from its warehouse the use of capital was necessary. The merchandise was purchased and sold. The warehouse business constituted 54 per cent. of the gross sales for one of the years and 34 per cent. for the other. The purchase of merchandise involved the use of money or credit, and it is not claimed the goods were purchased on credit to any appreciable extent. The indebtedness to trade creditors at the end of the two fiscal years involved was so small in proportion to the purchases and sales that it is apparent that credit purchases were not large.

Appellant failed to successfully carry the burden that was upon it to sustain its claim as to nominal capital. Avery v. Commissioner of Internal Revenue (C. C. A.) 22 F.(2d) 6, 55 A. L. R. 1277; Royal Packing Co. v. Commissioner of Internal Revenue (C. C. A.) 22 F.(2d) 536.

The second proposition relates to the question of including in invested capital the actual cash value of notes taken for the corporation stock. These notes were tangible property under section 325, Revenue Act of 1918 (40 Stat. p. 1091), and under section 326 were part of the invested capital, provided they were bona fide paid in for stock or shares at the time of such payment.

Appellant insists that the question of bona fides is confined to the time the notes were paid in, and such is clearly the statute. We do not understand, however, that subse-

278

quent events are not admissible to show the bona fides at the time the notes were paid in. It is to be noted that under Rev. St. Mo. 1919, §§ 9740 and 10155, notes given by a stockholder are not to be considered as payment of any part of the capital stock. It has been held in the case of Max Kaufman & Co. v. Bowers, 11 F.(2d) 662 (a District Court case), that such provision under a somewhat similar statute in New York was not absolutely controlling; that the issuance of stock for stockholders, while illegal, was not void, and did not prevent proving the bona fides of the transaction.

While the Missouri statutes might not be controlling on this subject, they certainly bear on the question of bona fides in relation to giving the notes for stock, as the corporation was a Missouri corporation and the new stock was issued to the old stockholders. Subsequent events furnish some evidence to sustain the findings of the Board of Tax Appeals on this question. It does not appear that any effort was made to collect these notes when they were due, even though subsequently thereto the corporation was borrowing money to use in its business at the rate of 8 per cent., while the notes were yielding only 6 per cent. Credits or payments actually made on the notes were considered by the board in determining invested capital. The board found that the notes in question were not bona fide paid in for stock or shares.

The appellate courts, in appeals from the Board of Tax Appeals, are limited to the review of questions of law; the inquiry being whether or not the decision of the board is in accordance with law. We consider ourselves bound by the findings of fact of said board, provided there is substantial evidence to sustain the same. Avery v. Commissioner of Internal Revenue (C. C. A.) 22 F.(2d) 6, 55 A. L. R. 1277; Royal Packing Co. v. Commissioner of Internal Revenue (C. C. A.) 22 F.(2d) 536; W. K. Henderson Iron Works & Supply Co. v. Blair (App. D. C.) 25 F.(2d) 538; Greengard v. Commissioner, 29 F.(2d) 502 (decided November 30, 1928, C. C. A. Seventh Circuit); Denver Live Stock Com. Co. v. Commissioner of Internal Revenue, 29 F.(2d) 543 (this court, opinion filed November 24, 1928). There is substantial evidence to support the board's conclusion on the question of bona fides and on the question of whether the capital is nominal. The appellate court should not interfere therewith.

The judgment is affirmed.