**HATCH et al. v. UNITED STATES (two cases).** *

Circuit Court of Appeals, Eighth Circuit.
August 26, 1929.

Nos. 8447, 8448.

*Rehearing denied October 31, 1929.

Herbert W. Brackney, of Sioux City, Iowa (W. T. Stockman, of Sioux City, Iowa, and Richard A. Zwemer, of Chicago, Ill., on the brief), for appellants.

J. H. Pigg, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Bennett E. Rhinehart, U. S. Atty., of Anamosa, Iowa, and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and F. F. Toomey, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before BOOTH, Circuit Judge, and SANBORN and DEWEY, District Judges.

BOOTH, Circuit Judge. In the court below the United States brought two suits in equity to recover, from former stockholder distributees of a dissolved corporation, additional income and profits taxes assessed against the corporation for the calendar years 1917, 1918, and 1919, in the respective amounts $1,216, $4,508.24, and $8,548.65, with interest. The first suit (No. 8447 here) involved the years 1917 and 1918; the second suit (No. 8448 here) involved the year 1919. The four stockholder distributees of the corporation, F. M. Hatch, H. H. Holmes, H. U. Carpenter, and James Volin, were defendants in the first suit. Holmes died before the trial, and Laura M. Holmes was substituted, as his sole devisee. The same persons were defendants in the second suit, except that Laura M. Holmes was named as executrix of the will of H. H. Holmes.

The two suits were consolidated for trial. No proof was offered that the estate of H. H. Holmes was solvent, or as to the value of the estate, or that any property of the estate had come into the hands of Laura M. Holmes. Both cases were therefore dismissed as to her. Decree was entered against the other three defendants, adjudging that they were liable as distributees, and that each should make restitution in amounts which are not here questioned, if liability existed. From this decree, considered as a separate decree in each suit, the three defendants have taken the present appeals.

The contention of the appellants is that during the year 1917 the corporation was one having "not more than a nominal capital" within the meaning of section 209 of the Revenue Act of 1917 (40 Stat. 300, 307), and therefore was not liable for the additional tax assessed against it for that year, and that during the calendar years 1918 and 1919 the corporation was a "personal service corporation" within the meaning of section 200 of the Revenue Act of 1918 (40 Stat. 1057, 1058), and therefore was not liable for the additional tax assessed for those years.

So far as these appeals are concerned, there is no substantial difference between a "nominal capital corporation," under section 209 of the Revenue Act of 1917, and a "personal service corporation," under section 200 of the Revenue Act of 1918. It is conceded by the government that; if the corporation was of the character claimed, it was not liable for the additional taxes assessed.

There was substantial evidence tending to support the following facts: During the years in question the corporation was engaged in business as a live stock commission agency, having its principal place of business at Sioux City, Iowa. During the years 1917 and 1918 it had a paid-up capital of

$10,000; during the year 1919, of $20,000. At the beginning of 1917 it had a surplus of $16,149; at the beginning of 1919, of $13,-650. About $4,000 of the capital was invested in memberships of the Sioux City Live Stock Exchange, and a small amount in office furniture and equipment. During the year 1917 the corporation earned a gross income of $59,102, of which $4,705 represented interest on loans and discounts; net income, $9,220. In 1918 the gross income was $66,462, of which $987 represented interest received; net income, $15,906. In 1919 the gross income was $80,421, of which $7,264 was for interest received; net income, $28,018. The business of the corporation was of two kinds, selling live stock received on consignment, and buying live stock to fill orders of customers. Under the first class of business the expenses of yardage, feeding, and watering were borne by the corporation until the stock was sold. To handle these shipments the corporation had to have a reserve in the bank of from $25,000 to $30,000. It borrowed both from its stockholders and from banks. Sometimes it borrowed as much as $50,000 at a time. The money borrowed was used to carry the various shipments for customers, and this was a substantial part of the business. In a few instances the company carried customers on notes. Under the second class of business the corporation, on receiving an order to buy, would carry out the order by buying cattle—sometimes not more than one or two at a time—until the order was filled. In order to carry out these transactions, capital was required and used. This buying was also a substantial part of the business.

It is the claim of the defendants that this money so used was not the capital of the corporation, but accumulations of profits belonging to members and allowed to remain for use in the business; and it is further claimed that the loans made were in fact personal loans made by members of the corporation, and not by the corporation itself; the individual transactions being entered upon the books of the corporation for convenience. It appears, however, that the income derived from these loans, that is, the interest in the amounts above stated, were treated by the corporation on its books as income belonging to it, and these amounts were reported on its income tax returns; and the same is true with respect to income from real estate in the year 1919, amounting to about $5,800. In the balance sheets of the company at the close of the years 1917, 1918, and 1919, the notes receivable exceeded the accounts pay-able to members of the corporation by very substantial amounts. The conclusion is that the corporation was either loaning these excess amounts to its customers on its own account, or else it was carrying its customers to that extent; in either case, making use of capital.

The court found that the capital of the corporation was a material income-producing factor. We think that this finding of ultimate fact is fully justified by the above-recited primary facts, which are themselves amply sustained by the testimony and exhibits in the case. In many of its facts the case at bar is similar to the cases of Dreyer Commission Co. v. Hellmich, 25 F.(2d) 408 (C. C. A. 8); Denver Live Stock Commission Co. v. Com'r, 29 F.(2d) 543 (C. C. A. 8); Conklin-Zonne-Loomis Co. v. Com'r, 29 F.(2d) 698 (C. C. A. 8); Feeders' Supply Co. v. Com'r, 31 F.(2d) 274 (C. C. A. 8); St. Paul Abstract Co. v. Com'r., 32 F.(2d) 225 (C. C. A. 8). See, also, Hubbard-Ragsdale Co. v. Dean (D. C.) 15 F.(2d) 410, affirmed (C. C. A.) 15 F.(2d) 1013. And the conclusion here reached finds support in those cases.

One other matter remains to be noticed. Error is assigned because of the exclusion of certain testimony. The witness Frank E. Scott was asked: "Q. Have you, due to your 29 years of experience, formed an opinion, Mr. Scott, as to whether or not the use of $100,000.00 could be made to be material income-producing factor in a live stock commission business conducted as the business is at Sioux City, Iowa?" Objection was made to the question, and the objection was sustained. The witness Howard G. Pierce was asked: "Q. During your years of experience on the Sioux City market, have you had occasion to observe whether or not the use of capital up to $20,000, used by a commission merchant for the purpose of loaning money to cattle raisers, was a material help in building up the commission business?" Objection was made to the question, and the objection was sustained.

There are several reasons why reversible error cannot be predicated upon these rulings: First, because no offer to prove was made after the rulings. This was necessary. Federal Surety Co. v. Standard Oil Co., 32 F.(2d) 119 (C. C. A. 8), and cases cited. Second, even if the testimony of the witnesses could be considered as expert testimony, which we do not decide, yet the allowance or rejection of expert testimony rested largely in the discretion of the trial judge, and no abuse of discretion is shown. Third, the

questions called for conclusions of the witnesses as to the ultimate fact which the court was called upon to find, and for that reason the exclusion was proper.

We think the decree as entered was right, and it is affirmed.