*120 OPINION.
Lansdon :
The only question to be determined is whether petitioner is entitled to classification as a personal service corporation for the taxable years. Section 200 of the Eevenue Act of 1918 defines a personal service corporation as follows:
*121 Sec. 200. That when used in this title—
*******
The term personal service corporation ” means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits or income derived from trading as a principal, or (2) of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 0, 1917, and November 11, 1918, both dates inclusive.
In. order to bring itself within the definition, petitioner must establish: (1) That it is engaged in rendering personal service as distinguished from trading, merchandising or manufacturing; (2) that the principal stockholders are regularly engaged in the active conduct of the business; (3) that capital, whether invested or borrowed, is not a material income-producing factor; and (4) that the income may be ascribed primarily to the activities of the principal stockholders. Failure to come within any one of the conditions is fatal to the claim for personal service classification.
The respondent admits that petitioner meets conditions (1) and (2), but contends that capital, both invested and borrowed, was a .material income-producing factor, and that petitioner’s income during the years involved .can not be ascribed primarily to the activities of its principal stockholders.
Inspection of petitioner’s balance sheets for the taxable years discloses that it had available 'a very large amount of capital. In addition to its paid-up capital of $200,000, it had earned surplus of $13,126.01 for 1918; $21,202.64 for 1919; $69,T16.48 for 1920; and $215,166.05 for 1921. The decisions of the Board and of the courts have been uniform that it is not the presence of capital but its use which determines whether or not it ⅛ a material income-producing factor. Appeal of Massengale Advertising Agency, 2 B. T. A. 26; Appeal of S. A. Conover Co., 6 B. T. A. 679; Fuller & Smith v. Boutzahn (D. C.), 23 Fed. (2d) 959; Alexander & Garrett v. United States (D. C.), 21 Fed. (2d) 547. The evidence is clear that for the most part this capital was used to meet current expenses pending the collection of brokerage. Expenses, excluding compensation of stockholders, amounted to $313,203.89 for 1918,' $418,081.33 for 1919, $608,400.50 for 1920, and $562,923.87 for 1921. The payment of salaries, office rent, supplies and incidental expenses of operation does not constitute the use of capital as a material income-producing factor. F. Wallis Armstrong Co. v. McCaughn, 21 Fed. (2d) 636; *122 De Laski, etc. Co. v. Iredell, 268 Fed. 377. Petitioner’s income from all other sources than brokerage earned, when compared to its total gross income, amounts to approximately .4 per cent for 1918, .9 per cent for 1919, .4 per cent for 1920, and 1 per cent for 1921. The balance sheets disclose that a large portion of petitioner’s assets had been advanced to stockholders and employees and invested in Liberty bonds, stocks, furniture and fixtures, and life insurance. That portion of petitioner’s capital was not used in the business and therefore could not be a material income-producing factor. George B. Ricaby Co. v. Nauts (D. C.), 19 Fed. (2d) 271; Alexander & Garrett v. United States, supra. We are of the opinion that capital was not a material income-producing factor within the meaning of section 200 of the Revenue Act.
It remains for us to determine whether petitioner’s income may be ascribed primarily to the activities of the principal stockholders. During the years herein involved petitioner had from 89 to 140 employees. Of this number from 7 to 9 were office managers who received compensation ranging from $1,100 to $10,952.74, and from 27 to 39 were salesmen whose compensation ranged from $1,000 to $6,000. The remaining number of employees were general clerks, file clerks, stenographers, etc. The employees outnumbered the stockholders from 6 to 10 times. The salesmen and'office managers outnumbered the stockholders from 2 to 3 times. Total salaries paid to employees far exceeded total salaries paid to stockholders. In 1920 salaries were paid to employees in an amount 3 times that paid to stockholders. In Appeal of Patterson-Andress Co., 6 B. T. A. 392, we stated:
* * * We do not mean to hold that personal service classification must be denied in all cases where there are employees under the supervision of stockholders, but where, as here, employees so greatly outnumbered the stockholders and there is no evidence of the character of the service performed by most of them and they receive substantially one-half of the earnings over the expenses other than salary, we can not find that the income is to be ascribed primarily to the activities of the stockholders. In our opinion this clause means more than that the stockholders shall obtain the clients and supervise the work, or that clients shall look to their experience; it means, among other things, that the corporation may not rely upon non-stockholders to do a substantial amount of the work which produces the income whether such work be detailed or supervisory. Just as another clause excludes from personal service classification those corporations where capital contributes materially to the income, so does this clause exclude corporations where the services of employees so contribute.
See also Albrecht & Weaver, Inc. v. Commissioner, 9 B. T. A. 560, 565.
*123 The discussion of the Circuit Court of Appeals in Metropolitan Business College v. Blair, 24 Fed. (2d) 176, is particularly applicable in the instant case:
If tliis were a prosperous manufacturing corporation, employing many skilled workmen and capable foremen, salesmen, and tlie like, it could not be said that the corporate income was primarily attributable to the activities of the few others who, in managerial capacity, successfully planned and dominated the corporate affairs. The absolute indispensability of a competent working force would be too apparent to ascribe to management primacy of influence in producing corporate income.
The teaching body is here a skilled working force, without which the income would have been restricted to such as would arise from a student body which these three men alone might handle. Stenographers, messengers, and others serving them in personal capacity, might well be said to be incidental to the management, and such service would not prevent the conclusion that the personal activities of the managing stockholders were a primary factor in producing the income. * * *
Probably petitioner’s very success is ascribable largely to wisdom in the choice of competent teachers; at least it may be safely said that the petitioner would be the first to resent the imputation that its teachers were mere rubber stamps or talking machines. *
Petitioner contends that its income results primarily from the activities of the stockholders in securing offerings of merchandise and distributing same for sale, and that selling was less difficult and of secondary importance. We are not inclined to agree with this contention. A very attractive factor of petitioner’s business was its capable selling organization, which was no doubt influential in causing principals to market their products through petitioner’s agency.
The stockholders of petitioner exercised supervision over the office managers and salesmen. When offerings of merchandise were received and allocated to the various territories, one of the executive stockholders would telephone its territorial office manager and inform him that he should sell a certain quantity of merchandise at a certain price. Market information and sales arguments were also thus dispensed and transmitted to the salemen. It remained necessary, however, for the salesmen to call on the trade and sell the offerings, and undoubtedly petitioner’s volume of sales depended largely upon the ability and industry of its salesmen.
We are of the opinion that petitioner’s income can not be ascribed primarily to the activities of the principal stockholders, and that classification as a personal service corporation should, therefore, be denied. Louis Hilfer Co. v. Commissioner, 9 B. T. A. 1264.
Beviewed by the Board.

Judgment will be entered for the respondent.